625 P.2d 417

Joseph H. SMITH, Plaintiff-Appellant,

v.

BOISE KENWORTH SALES, INC., an Idaho corporation; Walter O. Casey, Sales Manager for Boise Kenworth Sales, Inc., and in an individual capacity; S. Hatch Barrett, Managing Agent, officer and part owner of said corporation, and as an individual, Defendants-Respondents,

and

Larry Fritts, Assistant Manager of said corporation and as an individual; Robert M. Stevenson, Secretary-Treasurer of said corporation and as an individual; Paccar, Inc., a Washington corporation doing business in the State of Idaho; Kenworth Motor Truck Co., a Washington corporation doing business in the State of Idaho as a franchised dealer for the sale of Kenworth Motor Trucks, a wholly owned subsidiary of said Paccar, Inc., Defendants.

No. 12881.

Supreme Court of Idaho.

March 20, 1981.

**64**

Vernon K. Smith, Boise, for plaintiff-appellant.

Edwin V. Apel, Jr., of Hawley, Troxell, Ennis & Hawley, Boise, for defendants-respondents.

BAKES, Chief Justice.

The instant controversy arose when an attempted purchase of a diesel truck failed to materialize. Plaintiff appellant Joseph Smith, who alleged that he had actually purchased the truck, appeals from a lower court order granting summary judgment in favor of defendant respondent Boise Kenworth Sales, Inc. The record consists of affidavits, depositions and exhibits.

Joseph Smith, a self employed businessman, had previously purchased a new 1971 Kenworth truck from Boise Kenworth. Beginning in late 1972 and continuing into the summer of 1973, Smith and Walter Casey, sales manager for Boise Kenworth, discussed the possibility of ordering a new truck to replace Smith's 1971 Kenworth. The truck in question was not a stock inventory item, but was to be manufactured according to the customer's specifications. The Kenworth manufacturing plant gets many of the component parts from other manufacturers and then assembles the truck at its plant in Seattle.

In late August, 1973, Casey and Smith sat down and filled out a "Customer's Truck Purchase Order." The customer's purchase order is used to list the specifications for the truck so that it can be ordered from the plant according to the customer's specific needs and so that the price for the package can be ascertained and quoted to the customer. A purchase order can be used as a worksheet or, if the parties so intend, a contract.

The following clause appears at the very top of the first page of the purchase order form: "This order incorporates the conditions on the reverse side and page two of this order and I [the buyer] understand that it becomes binding only when signed by a person authorized to accept on behalf of the Distributor [Boise Kenworth]." The following form language appears at the very bottom of the page: "ACCEPTED BY _____." Beneath the acceptance blank is the following language: "Distributor's Acceptance. Subject to the conditions on the reverse side of this form and page two of this order, this order for the above described chassis is hereby accepted." The reverse side of the purchase order lists conditions of the sale, including the following:

"Distributor shall not be responsible for any failure or delay in shipment or delivery due to causes beyond his control.... If the delay shall extend Thirty days beyond the delivery date set forth in this agreement, Distributor may cancel this order and return to Customer any deposit made with Distributor, and Distributor shall be relieved of any further liability to Customer."

Smith stated that he did not review the original of the customer's purchase order. According to Smith, he received only photostatic copies of the purchase order which did not include the reverse side of the first page. Moreover, Smith claims that Boise Kenworth's right to cancel the contract pursuant to the above clause was never discussed during the negotiations.

When Casey and Smith filled out this first purchase order in late August of 1973, a total price was not placed on the order at that time because Casey had to determine the price of the various components. He

also wanted to have the rough working copy typed into a finalized copy. Both parties seem to agree that at this point in time no contract had come into being.

In early September, 1973, a new customer's purchase order was typed and then reviewed by Casey and Smith. Smith claims that at that time Boise Kenworth, through Casey, agreed to sell and deliver to Smith the truck as per his specifications for approximately $29,000. No customer's purchase order form in the record contains a price quotation at this amount. In his deposition, Smith testified that he must have lost or misplaced his copy.

Soon thereafter, Boise Kenworth submitted a *"Distributor's* Truck Purchase Order" to the manufacturer for one Kenworth diesel truck. This purchase order was signed by S. Hatch Barrett, president of Boise Kenworth. Barrett is allegedly the only Boise Kenworth agent authorized to accept a *customer's* purchase order and to place a *distributor's* purchase order with Kenworth in Seattle. The distributor's purchase order submitted by Barrett lists Joseph Smith as the customer, states the preferred delivery date as April 1, 1974, and is dated September 12, 1973.

Discussions and negotiations continued during the latter part of 1973 and early 1974. Casey confirmed that the truck was on order and informed Smith that it had been issued a serial number.

During this time, it became apparent that the Kenworth plant in Seattle was having problems obtaining certain component parts and also that the cost of assembling the truck was increasing. According to Smith, it was then decided that another customer's purchase order would be prepared, with the understanding that it would update the prior order to secure a preferred delivery date of April 1, 1974. Further, Smith alleges that he was told that the new order would include a slight cost increase, not to exceed 5% of the original purchase price.

The new purchase order then drafted by Casey bore a price of $34,799, a preferred delivery date of April 1, 1974, and the following handwritten message: "Joe: This is

it! Terrible isn't it? W.O.C." The new purchase order bore no signatures. No Boise Kenworth agent had signed the form in the blank designated for acceptance. The purchase order also stated: "Price includes 1974 increase." Smith received only a photocopy of this purchase order and therefore did not receive the reverse side of the purchase order. Smith never signed that purchase order, or any other. Smith testified that he was never asked to sign.

Smith was disturbed about the price increase, but told Casey not to cancel the order. Smith testified that due to the increase in price, he felt he could "bow out" of the transaction if he wished. He also testified that Casey at this time informed him that Boise Kenworth would take the truck as stock inventory even if Smith did not want it, *i. e.,* that Boise Kenworth would not cancel its order with the Kenworth plant in any event.

On or about January 21, 1974, Casey sent a letter to Smith. The letter began:

"It is quite apparent that I'm long overdue in solidifying your truck order into a firm and positive priced order. With the many allocation problems we are having, price increases, etc., it has been virtually impossible to be more positive than we have been. This has been no major problem apparently to most all of our customers because we are still selling and ordering these trucks at an ever increasing rate. However, you and I obviously must take a different approach and believe me I am sympathetic with your concern. The prices, dates, etc., that follows are firm and as positive as they can be."

In the letter, Casey quoted several prices which were dependent upon the availability of certain component parts. The prices were in the neighborhood of $35,000. The letter went on to state that "the truck is tentatively scheduled to be built around July 15, 1974." The final paragraph read:

"I might add at this point that these prices *do* include all prevailing price increases and *will be* the prices in effect at delivery time. If I have failed to cover

all items of question, please call me so we can arrange a get-together to further finalize your order." (Emphasis in original.)

Discussions and negotiations continued. Casey showed Smith progress reports on the assembly process of the truck. Kenworth continued to have problems with parts availability and manufacturing delays. The anticipated delivery date was changed by Kenworth from April, 1974, to July; then to August; then to September; and then to October. During this period of time, Casey was sending change orders to the Kenworth plant in accordance with Smith's request that certain of the optional components be altered. Boise Kenworth contends that these change orders also contributed to the delays.

While awaiting delivery of the truck, Smith pursued the possibility of disposing of his 1971 Kenworth, as he felt he would no longer need it after delivery of the 1974 truck. With the assistance of Boise Kenworth, he eventually found a willing buyer for the used truck. However, before the sale was made, Casey told Smith not to sell the 1971 truck just yet, since the delivery date on the new truck was now being extended into November, 1974.

Finally, when Boise Kenworth informed Smith that the price of the truck would be raised to $39,900 and the delivery date postponed from November to December, Smith's counsel wrote to Boise Kenworth and demanded that delivery be made in ten days and at the allegedly agreed upon price of $34,779.

Barrett responded with a letter to the effect that there was no contract of record signed or accepted by any agent of Boise Kenworth. Soon thereafter, Barrett cancelled Boise Kenworth's distributor's purchase order for the Smith truck with the Kenworth factory.

On April 10, 1975, Smith commenced the instant action demanding damages for Boise Kenworth's alleged breach of contract. The district court granted defendant's motion for summary judgment on the following grounds:

"Because (1) seller at all times expressly reserved the right to cancel the order for any failure or delay of more than 30 days in shipment due to causes beyond its control, which the undisputed facts show did occur; (2) the order was never accepted in the form expressly required by seller; and (3) buyer reserved the right to reject the finalized price after all the changes in specifications, I am forced to conclude that the negotiations did not result in a sale or a binding contract of sale."

Smith appeals from that decision, alleging the existence of a number of issues of material fact.

■ Upon motion for summary judgment, all facts and inferences in the record must be construed most favorably toward that party against whom summary judgment is sought, and if any genuine issue of material fact remains unresolved, summary judgment is improper. I.R.C.P. 56(c); *Farm Bureau Finance Co., Inc. v. Carney*, 100 Idaho 745, 605 P.2d 509 (1980); *Palmer v. Idaho Bank & Trust of Kooskia*, 100 Idaho 642, 603 P.2d 597 (1979); *Jones v. Jones*, 100 Idaho 510, 601 P.2d 1 (1979); *McKinley v. Fanning*, 100 Idaho 189, 595 P.2d 1084 (1979). Of course, if uncontroverted facts lead to a definite disposition as a matter of law, summary judgment is appropriate.

■ The facts appearing in this record demonstrate as a matter of law that no binding agreement ever came into existence. First, there is no customer's purchase order in the record which is signed by either party. More significantly, no customer's purchase order was signed in the space designated for acceptance by the distributor, Boise Kenworth. As previously noted, the contract specifies "that it becomes binding only when signed by a person authorized to accept on behalf of Distributor."

The Uniform Commercial Code provides that in general offers may be accepted in any reasonable manner and by any reasonable medium, "[u]nless otherwise unambiguously indicated by the language or circumstances." I.C. § 28–2–206(1). The custom-

er's purchase order unambiguously indicates that it must be signed by an authorized representative of Boise Kenworth in order to be binding, and it never was signed. Since Smith's offer to purchase the truck was never accepted in the manner provided in the agreement which Smith seeks to enforce, that contract therefore never came into being. *See Kroeze v. Chloride Group, Ltd.*, 572 F.2d 1099 (5th Cir. 1978); *Nations Enterprises, Inc. v. Process Equipment Co.*, 40 Colo.App. 390, 579 P.2d 655 (1978); *Antonnucci v. Stevens Dodge, Inc.*, 73 Misc.2d 173, 340 N.Y.S.2d 979 (Civ.Ct.N.Y.1973). This is true even though Boise Kenworth, the truck distributor, responded to Smith's solicitations by ordering the truck from the assembly plant. *See Antonnucci v. Stevens Dodge, Inc., supra* (no contract formed where the order was unsigned even though the dealer ordered the pickup truck from the manufacturer and for the buyer).

■ The mere fact that the customer's purchase order remained unsigned does not, however, absolutely preclude the formation of a binding agreement. "A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." I.C. § 28–2–204(1). Similarly, "[e]ven though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." I.C. § 28–2–204(3). *See Paloukos v. Intermountain Chevrolet Co.*, 99 Idaho 740, 588 P.2d 939 (1978). In the instant case, however, the following facts negate any inference that the parties reached a definite agreement: the failure of either party to sign the purchase order in the designated spaces; Smith's understanding that he could "bow out" of the transaction at any time he so desired, coupled with Boise Kenworth's intention, as communicated to Smith, to retain the truck as stock inventory in the event that Smith did not want it; and the fact that Boise Kenworth continued, at Smith's behest, to make changes in factory specifications, which caused both delivery delays and price increases. Even construing the record in Smith's favor, the facts are not "sufficient to show [an] agreement," and, even if an agreement did exist, it must fail for indefiniteness, since as a matter of law there could be no "reasonably certain basis for giving an appropriate remedy." I.C. § 28–2–204(3).

This Court recently confronted a similar question in *Paloukos v. Intermountain Chevrolet Co., supra.* In that case, we concluded that summary judgment in favor of a truck dealer was inappropriate, there being material issues of fact concerning the existence of a contract for sale of a pickup truck. *Paloukos* is distinguishable, however. In *Paloukos*, the prospective buyer signed a form which described the truck and stated a definite price; the sale and the price were approved by the sales manager; and the car dealer accepted and retained a deposit on the truck for several months. None of those facts is present here.[1]

■ Smith also contends that the doctrine of promissory estoppel is applicable. Smith claims that if it were not for his dealings with Boise Kenworth, he could have bought another truck elsewhere and sold his 1971 truck. The Restatement (Second) of Contracts describes the doctrine of promissory estoppel in the following terms:

"A promise which the promisor should reasonably expect to induce action or forebearance on the part of the promisee or a third person and which does induce such

---

1. Even if Smith had been successful in demonstrating the existence of an agreement, that agreement must still satisfy the formal requirements of the statute of frauds. I.C. § 28–2–201. Because we affirm the district court's conclusion that a binding agreement did not come into existence, it is unnecessary to reach the statute of frauds issue. In *Paloukos*, this Court held that the question of agreement was to be submitted to the jury, and thus an examination of the statute of frauds issue was necessary.

By the same token, we need not discuss Boise Kenworth's contention that the terms of the customer's purchase order gave it the right to cancel the alleged contract due to factory delays.

68

action or forebearance is binding if injustice can be avoided only by enforcement of the promise." Restatement (Second) of Contracts § 90(1) (1973).

According to this Court, a party seeking to avail itself of the doctrine must show that:

"(1) the detriment suffered in reliance was substantial in an economic sense; (2) substantial loss to the promisee acting in reliance was or should have been foreseeable by the promisor; and (3) the promisee must have acted reasonably in justifiable reliance on the promise as made." *Mohr v. Shultz*, 86 Idaho 531, 540, 388 P.2d 1002, 1008 (1964).

However, the doctrine of promissory estoppel is intended as a substitute for consideration, *Mohr v. Shultz, supra*, and not as a substitute for an agreement between the parties. We think the following language from *C.H. Leavell & Co. v. Grafe & Associates, Inc.*, 90 Idaho 502, 514, 414 P.2d 873, 878–79 (1966), is equally applicable here:

"Because appellants did not accept respondent's offer and because the parties' communications amounted to no more than continued negotiations, the doctrine of promissory estoppel is not applicable to the present case."

For the foregoing reasons, the district court's entry of summary judgment on behalf of defendant respondent Boise Kenworth Sales, Inc., is hereby affirmed.

Costs to respondents.

McFADDEN, BISTLINE and SHEPARD, JJ., and DUNLAP, J. Pro Tem., concur.