633 P.2d 570

Harry L. LaCHANCE and Vivian F. LaChance, husband and wife, Plaintiffs-Appellants,

v.

ROSS MACHINE & MILL SUPPLY, INC., aka R & M Machine & Mill Supply, Inc., a dissolved Oklahoma corporation; Blount, Inc., a successor in interest of Ross Machine & Mill Supply, Inc., and R & M Machine & Mill Supply, Inc., a corporation; Doe I through X, Defendants-Respondents.

No. 13203.

Supreme Court of Idaho.

Aug. 26, 1981.

Patricia G. Young of Eberle, Berlin, Kading, Turnbow & Gillespie, Boise, for plaintiffs-appellants.

Ben Peterson of Baum & Peterson, Pocatello, for defendants-respondents.

BAKES, Chief Justice.

This is a products liability action for personal injuries sustained by Harry LaChance. The complaint was premised on theories of negligent design, strict tort liability and breach of warranty. LaChance was injured in 1975 while performing maintenance on a roller mill manufactured by defendant respondents and sold to LaChance's employer, Ralston Purina. Upon motion, the district court granted summary judgment in favor of the manufacturer. We affirm.

The roller mill was manufactured by respondents and sold to Ralston Purina in 1969. The mill is used in the animal feed industry to flake or crimp steamed grain between two heavy cast iron rollers. The rollers are situated within a housing which has several hinged inspection doors located above and below the rollers. There were no apparent safety devices. When the doors were open, there was direct access to the rollers.

The accident complained of occurred when LaChance, in his employment as maintenance man for Ralston Purina, knelt to reach the inspection door located below the rollers in order to clean out clogs of wet grain. He used an 18-inch screwdriver to break the clogs and rake out the material. In his deposition, LaChance stated that he was not aware the mill was in operation. Finishing his task, he started to raise himself from the kneeling position and, screw-

driver in hand, reached into an open inspection door to give himself support. This inspection door was located above the rollers. The blade of the screwdriver, passing through this open door and pointing toward the nip point of the rollers, became caught between them. The rollers then pulled the screwdriver and LaChance's hand inward, severely injuring his hand.

LaChance received worker's compensation benefits for his job-related injuries. He also commenced the instant suit. During discovery, the defendant manufacturer deposed the plaintiff LaChance. The testimony was revealing. LaChance indicated that, shortly after the machine was received, Ralston Purina had installed a grate above the rollers and behind the upper inspection door. The grate was installed both for purposes of safety and to prevent debris such as sticks, straws and stones from going into the rollers. Several days before the accident, the rollers were removed for recorrugation. The grate was also removed. The rollers were replaced, and the gap between the rollers was properly adjusted with a feeler gauge. When the work was completed, LaChance himself replaced the grate.

The grate was not in place, however, when the accident took place several days later. It had apparently been removed by another employee or employees of Ralston Purina, most probably the operator of the roller mill. LaChance was unaware that the grate had been removed. According to his deposition testimony, he specifically relied upon the grate's presence in using the open inspection door to give himself support.[1] LaChance candidly admitted that the removal of the grate and his reliance on its presence caused his injuries.

Based upon the plaintiff's deposition testimony, the defendants moved for summary judgment. They argued that the removal of the grate which Ralston Purina had designed and installed, together with the plaintiff's mistaken and unfortunate reliance upon its presence, was either the sole proximate cause of the accident or an intervening and superseding cause. The district court granted the motion, holding that there were no issues of material fact and that the removal of the homemade grate from the roller mill by unknown Ralston Purina employees was a superseding act of negligence which insulated the defendant manufacturer from any liability.

We agree with the district court's decision, mindful of course that upon motion for summary judgment, all facts and inferences are to be construed most favorably toward the party against whom judgment is sought, and if any genuine issue of material fact remains unresolved, summary judgment is inappropriate. I.R.C.P. 56(c); *Smith v. Boise Kenworth Sales, Inc.*, 102 Idaho 63, 625 P.2d 417 (1981); *Palmer v. Idaho Bank & Trust of Kooskia*, 100 Idaho 642, 603 P.2d 597 (1979). Conversely, if uncontroverted facts lead to a definite disposition as a matter of law, summary judgment is appropriate. *Smith v. Boise Kenworth Sales, Inc., supra.*

---

1. The following are excerpts from LaChance's deposition:

"Q. ... [I]t's hard for me to understand how a man of your intelligence and experience would put his hand in there when he didn't know whether the rollers were turning or not. You must have some explanation for that.

. . . .

"A. I did not put the screw driver in there intentionally. I more or less put it in there to pull myself up, assuming the grate was still in there, there was no way in the world that my hand could go into that roll.

. . . .

"... My thought at the time was that the grate was in. Had the grate been in, my hand would never have went—

. . . .

"Q. And it's the absence of that grate that you relied on that's the cause of the accident?

"A. Right.

. . . .

"Q. You think if you had not relied on the screen being there, you wouldn't have put your hand there at all?

"A. I would never have had my hand hurt.

"Q. You never would have?

"A. (Witness shakes head.)

"Q. And you thought that the screen would be between you and the roller, didn't you?

"A. The grate—

"Q. The grate would be between you and the roller?

"A. Right."

This case is controlled by principles set forth in *Mico Mobile Sales & Leasing, Inc. v. Skyline Corp.*, 97 Idaho 408, 546 P.2d 54 (1975). In *Mico*, we adopted criterion found in the Restatement (Second) of Torts for determining whether an intervening act should be considered a superseding cause of harm to another. *See* Restatement (Second) of Torts §§ 440–453 (1965). As we recognized in *Mico*, the key inquiry is whether the intervening acts were foreseeable. We stated, "Ordinarily, the question of foreseeability is a question of fact. . . . However, when the undisputed facts can lead to only one reasonable conclusion, this court may rule upon the issue of foreseeability as a matter of law." *Mico Mobile Sales & Leasing, Inc. v. Skyline Corp.*, 97 Idaho at 412–13, 546 P.2d at 58–59. *See Gamble v. Kinch*, 102 Idaho 335, 629 P.2d 1168 (1981).

Applying those principles to the instant case, we conclude that uncontroverted facts, particularly those established by plaintiff's deposition testimony, lead to but one conclusion: the intervening acts of employees of Ralston Purina were unforeseeable as a matter of law. The defendant manufacturer should not be expected to foresee the occurrence of each of the following four events: Ralston Purina's alteration of the roller mill by addition of the grate; the removal of the grate by an unknown Ralston Purina employee; the failure of that employee either to replace the grate or warn other employees of its removal; and, finally, the conduct of the plaintiff in inserting a handheld 18-inch screwdriver into an open door, without looking, while relying mistakenly upon the grate's presence. To hold otherwise would stretch the concept of foreseeability much too far.

Accordingly, we uphold the district court's conclusion that the intervening acts of employees of Ralston Purina were a superseding cause of the plaintiff's injuries, thus relieving the defendant respondents of any and all liability. The summary judgment is affirmed. Costs to respondents.

McFADDEN and SHEPARD, JJ., concur.

BISTLINE, Justice, dissenting.

The issue here is straightforward: Can a reasonable mind find it to be foreseeable that a purchaser of an unreasonably dangerous machine will install a safety device and subsequently an employee will remove that device without warning to other employees.[1] I believe the answer to this question is "yes." Some evidence that such is true is the Court's split in answering this question. A holding that a reasonable mind could not so find will suggest to some members of the trial bench and bar that a majority of this Court intimates that other members of this Court do not have reasonable minds—a conclusion which *all* members of the bench and bar may rush to endorse.

I.

It is essential initially to clarify what this case involves and what it does not involve. The trial court granted summary judgment because "the acts and conduct of the Ralston Purina employees in removing the grate or screen was, in fact, a superseding act of negligence which insulates any negligence of defendants." The sole issue raised and argued by both parties on this appeal is whether the trial court was correct in this finding. Whether the product was "unreasonably dangerous" and whether LaChance was so negligent as to bar his recovery as a matter of law are not questions presently before the Court, and it must be assumed for purposes of this appeal *that the machine*

---

**1.** The question of any negligence of LaChance is not involved in this appeal. Moreover, the possible argument that the defective machine did not "cause" the accident begs the question. The missing grate, the dangerous machine, both were *causes* of the accident. Neither was the sole cause; if the grate had been there, the accident would not have occurred; if the machine had not been unreasonably dangerous, the accident would not have occurred. The question is whether installation and removal of the grate by Ralston Purina should relieve the manufacturer of liability, *i. e.*, even though the defective design was one of the factors leading to the accident, were the superseding events so extraordinary that the manufacturer should be relieved of liability?

*was unreasonably dangerous* and that La-Chance's negligence, if any, was not such as to bar his recovery.[2]

The issue here, then, is whether the acts of employees of Ralston Purina in installing and removing this grate were *so highly extraordinary* as to be unforeseeable *as a matter of law, i. e.,* whether no reasonable mind could find these acts to be foreseeable. *See generally Mico Mobile Sales and Leasing, Inc. v. Skyline Corp.,* 97 Idaho 408, 546 P.2d 54 (1975); Restatement (Second) of Torts § 442 (1965). Put another way, the question is whether the subsequent acts affecting the machine's condition were so extraordinary and unforeseeable as to relieve the manufacturer from liability for manufacturing a defectively designed and unreasonably dangerous machine where La-Chance suffered his injuries because of that defective design.[3]

Since I disagree with both the method and result of the Court's analysis, I will first present my own analysis, to be followed by a critique of the Court's opinion.

## II.

At the outset, it should be emphasized that well reasoned cases dealing with a manufacturer's duty to install safety devices hold that such duty is non-delegable. As stated in *Bexiga v. Havir Manufacturing Corp.,* 60 N.J. 402, 290 A.2d 281 (1972):

> "Where a manufacturer places into the channels of trade a finished product which can be put to use and which should be provided with safety devices because without such it creates an unreasonable risk of harm, and where such safety devices can feasibly be installed by the manufacturer, the fact that he expects that someone else will install such devices

should not immunize him. The public interest in assuring that safety devices are installed demands more from the manufacturer than to permit him to leave such a critical phase of his manufacturing process to the haphazard conduct of the ultimate purchaser. The only way to be certain that such devices will be installed on all machines—which clearly the public interest requires—is to place the duty on the manufacturer where it is feasible for him to do so." *Id.* 290 A.2d at 285. *Accord, Pust v. Union Supply Co.,* 38 Colo. App. 435, 561 P.2d 355, 361 (1976) ("It would be anomalous, indeed, to adopt 402A, and yet permit a manufacturer to insulate itself from liability . . . [by manufacturing] a product for which it delegates to the purchaser either the duty of designing or incorporating safety devices"), *affm'd Union Supply Co. v. Pust,* 196 Colo. 162, 583 P.2d 276, 283 (1978) ("In strict liability cases, we are not concerned with who had the duty to provide [safety] guards, but rather with whether the conveyor was in a defective condition unreasonably dangerous because of the failure to provide safety guards before it reached the ultimate user or consumer"); *Minert v. Harsco Corp.,* 26 Wash.App. 867, 614 P.2d 686, 691 (1980) (manufacturer's duty to warn of dangers is non-delegable).

I would agree with the holdings of these cases that the manufacturer has a non-delegable duty to install safety devices where such is feasible and necessary to make the machine not "unreasonably dangerous." In the present case, then, the manufacturer installed no such devices, and the Court must assume that it could and should have done so. Should the manufacturer be relieved of liability because the purchaser in-

---

**2.** To emphasize what is not involved, a discussion of the status of this case at the time of the motion for summary judgment is required. The case was still in the initial stages of discovery, with defendants objecting to plaintiff's second set of interrogatories, when, based on the deposition of LaChance, defendants moved for summary judgment. Defendants argued that the sole cause of the accident was the removal of the grate without notice to La-Chance, that the machine had been materially

altered by the installation of the grate and that the manufacturer should not be held liable. No argument was made, or facts presented, to show that the machine was not unreasonably dangerous or that LaChance was negligent to some extent.

**3.** Again, it is incorrect to state that LaChance's actions were the cause of the accident. *See* discussion at part III *infra.*

stalled a safety device which was subsequently removed? I think not. If removal of a subsequently installed safety device is an intervening cause as a matter of law, the non-delegable duty of a manufacturer to install safety devices would be a hollow duty indeed. I would not find it to be unforeseeable that a safety device would be installed, nor totally unforeseeable that such might be removed without notice. When an unreasonably dangerous machine is sold, it appears obvious to me that the manufacturer should expect the purchaser to act to try to make the machine safe, and that such actions might even partly cause an accident.[4]

The guidelines for determining whether an intervening act was a superseding cause of harm to another are set forth in the Restatement (Second) of Torts § 442 (1965), and were quoted in *Mico Mobile Sales & Leasing, Inc. v. Skyline Corp.*, 97 Idaho 408, 546 P.2d 54 (1975), as follows: [5]

" ' * * *

" '(a) the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;

" '(b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;

" '(c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

" '(d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

" '(e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

" '(f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.' " *Id.* at 412, 546 P.2d at 58.

As to the first factor, the harm, being caught between the rollers, is the same with or without the intervening acts. As to the second factor, which provides for determining from hindsight whether it would be highly extraordinary for the superseding act to occur, given the manufacturer's negligence, *see* Comment b to § 442, reasonable minds could well differ as to whether it could be expected that a third party would install a safety device which later was removed without notice. As to the third factor, a reasonable mind could well find that it is perfectly normal for a third party to attempt to install a safety device in an unreasonably dangerous machine. It is clear that the installation of the safety device was not "independent" of the dangerous condition of the machine, but rather was dependent upon that condition. It follows that the subsequent removal of the device was also dependent upon the existence of the machine and defect therein. Under the fourth factor, that the intervening force is due to a third person's act or omission, this force was due to a third party's act. Under the fifth factor, the act in removing the grate of the third party was perhaps wrongful toward LaChance, and perhaps did subject that third party to liability to LaChance; nonetheless, this remains a question of fact for the jury. Finally, under the sixth factor, there is a medium degree of culpability at most in installing a safety device and subsequently removing it without warning. Balancing these six factors, these acts were not so extraordinary, so wrongful and culpable, that a reasonable mind could not find that this was not a superseding cause. A su-

---

4. An analogy can be drawn to the person who starts a fire in a house. It is foreseeable that a passerby will run into the house to try and save the screaming infants. If the actions of the passerby cause further damages, this does not relieve the arsonist from liability. He created the situation, and he remains liable for the foreseeable acts of would-be rescuers.

5. Section 442 specifically deals with superseding cause in negligence actions, not strict liability actions. Nonetheless, this Court adopted this test in strict liability actions in *Mico*.

perseding cause can be determined as a matter of law only in a *highly extraordinary case*, such as *Mico Mobile Sales*, where one defendant poured antifreeze in the water line of a trailer to keep the water from freezing. Such an act, which violated state law, mobile home industry standards and plumbing trade practices, was totally unforeseeable and relieved the manufacturer of liability. The degree of culpability and wrongfulness in the present case is simply not that great.

Where a manufacturer sells a machine defectively designed so that it is unreasonably dangerous, as it must be assumed the machine here was, it is certainly foreseeable that the purchaser will attempt to install safety devices, and that such devices may prove to be inadequate, or that they may be removed without warning. It is the duty of the manufacturer to build a machine that is not unreasonably dangerous, and it cannot escape that duty automatically, as a matter of law, simply because someone else has attempted to make the machine safe. It is for the jury, under proper instructions, to decide whether this manufacturer, who at this stage must be presumed to have designed and sold an unreasonably dangerous machine, should be relieved of liability because of the attempt of Ralston Purina to make this machine safe. Thus I would not hold, as a matter of law, that these acts constituted a superseding act of negligence.

### III.

Some comment must also be made on the Court's listing of four events which it believes no reasonable person could find to be foreseeable. Such an analysis, which totally ignores the six-part test adopted in *Mico*, serves only to confuse the central issue here. The first event listed is the alteration of the roller mill by the addition of the grate. It is not surprising (or unforeseeable) to me that an employer would attempt to install some type of safety device on an unreasonably dangerous machine in order to protect its employees, as was done here.

The second fact listed by the Court is the removal of the grate. Again, there is nothing surprising in the removal of this grate, as such was necessary for maintenance purposes. Skipping to the fourth factor, the conduct of LaChance, this has nothing to do with intervening cause analysis. The Court apparently is confusing comparative negligence with superseding cause. Moreover, drawing all inferences in LaChance's favor, his deposition does not state that he placed his hand in the door *because of* the grate. Rather, he states that if the grate had been there he would not have been injured. While it may be true that he would not have been injured had the grate been there, this does not mean that the absence of the grate caused his accident. LaChance could well have simply placed his hand there without thinking. Regardless of the fact that LaChance's actions are not at issue in this appeal, even if it is argued that he put his hand there solely in reliance on the grate still there is a jury question as to whether it was foreseeable that the grate would be installed and removed without notice.

That leaves the third act—the failure to replace the grate or warn of its removal. This is the only act that may amount to a superseding cause, in spite of the Court's smoke-screen listing of four actions. The bottom line here is whether the failure to replace this grate was so extraordinary an action that no reasonable mind could find it to be foreseeable. While this may be a close question, I cannot state that no reasonable mind could find this to be foreseeable. Ralston Purina purchased an unreasonably dangerous machine and attempted to make it safe by installing this grate. The fact that the grate was removed, thus perhaps partly causing the accident, does not necessarily relieve the manufacturer of liability for producing and selling this unreasonably dangerous machine. Upon further development of this case, it could develop that the manufacturer had a duty to install other, safer, devices,[6] and I would

---

6. Other possible safety devices here would be a bolted door with a warning, a grate inside the door instead of over the rollers, an interlock system whereby the machine would not operate when the door was open, or a spring door that has to be held open.

not hold as a matter of law that the actions here relieved it of that duty. It is a question of fact for the jury as to whether the removal of a safety device without warning, where such has been installed by the purchaser on an unreasonably dangerous machine, is so extraordinary as to be unforeseeable. A reasonable mind could well find that it is foreseeable that a purchaser will attempt to make an unreasonably dangerous machine safe, and that that attempt will fail for one reason or another, including for the reason that the device was removed without warning. The manufacturer should not be able to escape liability as a matter of law because of the purchaser's attempt to make the machine safe, which is something the manufacturer should have done in the first place. Nor should the purchaser or its employees be penalized for an attempt at making the machine safe.

I respectfully dissent.

DONALDSON, J., concurs.