## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 43440-2015

| | | |
|---|---|---|
| WILLIAM MICHAEL NICHOLSON, a/k/a W. MICHAEL NICHOLSON and JOAN NICHOLSON, husband and wife, | ) ) ) ) | Boise, January 2017 Term |
| Plaintiffs-Appellants, | ) ) | 2017 Opinion No. 15 |
| v. | ) ) | Filed: February 24, 2017 |
| COEUR D'ALENE PLACER MINING CORP., a Delaware corporation, and IFG TIMBER, L.L.C., an Idaho limited liability company, | ) ) ) ) ) ) ) | Stephen W. Kenyon, Clerk |
| Defendants-Respondents. | ) ) ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, in and for Shoshone County.  Hon. John T. Mitchell, District Judge.

The judgment of the district court is affirmed.

James M. McMillan; Wallace, argued for appellant.

Theron J. De Smet; Ramsden, Marfice, Ealy & Harris, L.L.P.; Coeur d'Alene, argued for respondents.

_____

EISMANN, Justice.

This is an appeal out of Shoshone County from a judgment:  (a) denying recovery on an alleged oral promise to grant the Plaintiffs a right of first refusal with respect to a parcel of real property they were leasing, (b) denying recovery on an alleged oral promise to purchase the Plaintiffs' buildings that were located on that property, and (c) finding that the Plaintiffs were guilty of unlawful detainer.  We affirm the judgment.

### I.
### Factual Background.

In August 1995, W. Michael Nicholson and Joan Nicholson ("Plaintiffs") purchased buildings located on land owned by the Coeur d'Alene Placer Mining Corporation ("CDA Placer"). On August 28, 1995, Plaintiffs entered into a written, one-year lease with CDA Placer for a parcel of land consisting of approximately one-half acre on which the buildings were located. The Plaintiffs used one of the buildings for their residence. The term of the lease was from July 1, 1995, through June 30, 1996, and the lease did not grant Plaintiffs a right to renew it or an option to purchase the real property. Plaintiffs and CDA Placer annually agreed to renew the lease until 2014.

The parcel rented to Plaintiffs was part of a larger parcel consisting of about 3,000 acres that was owned by CDA Placer. By letter addressed to Plaintiffs dated June 17, 2013, CDA Placer requested the 2012 and 2013 lease payments. The letter included the following:

> However, the Company's Idaho land is currently under contract for sale. We have only a brief period to arrange for a sale of your homesite to you. The buyer will not permit tenants on any of their land. Our real estate broker, Kevin Boling, will be contacting you shortly to discuss your options.

A letter addressed to Plaintiffs dated December 13, 2013, from Kevin Boling included the following:

> In May 2013 Coeur d Alene Placer reached agreement to sell the entire property (approximately 3,000 acres) to Western Rivers Conservancy. The due diligence period was purposely extended with closing scheduled for late January 2014. Coeur d Alene Placer sent you a letter dated June 13, 2013 concerning your 2012 and 2013 lease payments. This same letter informed you the property was under contract to be sold and again offered to "arrange for a sale of your home site to you."
> There remains a brief period of time for you to make an offer to purchase this home site. Please let me know at your earliest convenience if that is an option for you. If purchase is not an option for you then we need to discuss your plans for vacating the property. Any unused portion of the rent will be returned to you when you do.

By letter dated January 28, 2014, CDA Placer's counsel notified Plaintiffs that it would not renew the lease and that they must vacate the real property by midnight on June 30, 2014. In a letter dated March 6, 2014, from Plaintiff's counsel to CDA Placer's counsel, Mr. Nicholson proposed: "He will accept the acre surrounding his home as per the survey, plus an additional acre to the north-northeast, in consideration of the $2,250 already paid for this year's lease." On March 28, 2014, the sale of CDA Placer's property to IFG Timber, L.L.C. ("IFG Timber"),

2

closed. The property purchased by IFG Timber included the parcel that had been leased to Plaintiffs. By letter dated June 10, 2014, to IFG Timber, Plaintiffs' counsel inquired if IFG Timber was willing to accept Plaintiffs' offer. By letter dated June 16, 2014, IFG Timber notified Plaintiffs' counsel that it did not want to sell or lease the parcel.

On June 30, 2014, Plaintiffs filed this action against CDA Placer and IFG Timber. With respect to CDA Placer, Plaintiffs alleged: (a) that they were entitled to damages from CDA Placer for its breach of the oral contract promising Plaintiffs the right of first refusal to purchase the real property upon which the buildings were located and to buy the buildings if the lease was terminated or the land sold; (b) that Plaintiffs were entitled to damages against CDA Placer under the doctrine of promissory estoppel for the breach of these oral promises; (c) that Plaintiffs were entitled to specific performance of CDA Placer's oral promises; and (d) that CDA Placer would be unjustly enriched if Plaintiffs have to vacate the property, because they will be unable to remove the buildings. With respect to IFG Timber, Plaintiffs allege that it will be unjustly enriched if Plaintiffs have to vacate the property, because they will be unable to remove the buildings. The Defendants answered, denying the material allegations in the complaint, and IFG Timber filed a counterclaim seeking to evict Plaintiffs from the real property.

The Defendants then moved for judgment on the pleadings and later for summary judgment regarding the allegations in the complaint. After briefing and argument, the district court granted the motion for summary judgment. IFG Timber then moved for summary judgment on its counterclaim, and, after briefing and argument, the court granted that motion. Plaintiffs moved for reconsideration, which the court denied after hearing argument from the parties, and Plaintiffs then timely appealed.

When reviewing on appeal the granting of a motion for summary judgment, we apply the same standard used by the trial court in ruling on the motion. *Infanger v. City of Salmon*, 137 Idaho 45, 46–47, 44 P.3d 1100, 1101–02 (2002). We construe all disputed facts, and draw all reasonable inferences from the record, in favor of the non-moving party. *Id*. at 47, 44 P.3d at 1102. Summary judgment is appropriate only if the evidence in the record and any admissions show that there is no genuine issue of any material fact regarding the issues raised in the pleadings and that the moving party is entitled to judgment as a matter of law. *Id*. If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review. *Id*.

3

## II.

## Did the District Court Err in Dismissing the Claims Regarding the Alleged Right of First
## Refusal and Alleged Promise to Purchase the Buildings?

**A. The alleged right of first refusal.** Plaintiffs contend that CDA Placer orally promised they would have a right of first refusal to purchase the real property upon which their buildings were located and promised to buy the buildings if the lease was terminated or the land was sold. In support of their motion for summary judgment, the Defendants contended that the alleged oral agreement regarding the right of first refusal was barred by the statute of limitations in Idaho Code section 9-503; that CDA Placer offered to sell the property to Plaintiffs on three occasions, and they declined to purchase it; that there was no consideration for the alleged oral agreement; that the alleged oral agreement was too indefinite to be enforced; that promissory estoppel and specific enforcement do not apply to an agreement that is too indefinite to be enforced; that the alleged reliance was simply conduct required under the terms of the lease; and that any improvements to the land were made in violation of the lease, which required prior written approval before making any improvements.

In response, Plaintiffs argued that the Defendants were equitably estopped from relying upon the statute of frauds, based upon the continued promises by agents of CDA Placer that they had a right of first refusal, and that there was consideration for the agreement under the doctrine of promissory estoppel because Plaintiffs relied to their detriment upon the promise of a right of first refusal. They argued that their reliance was "maintenance and improvement to the buildings" and the "[p]lacement of an existing well into operation with a pump and well-house, removing large amounts of rubbish and 'junk,' restoring a garden plot, and general maintenance to the land and buildings." With respect to the lease requirement of prior written approval before making any improvements to the real property, they alleged that the agents of CDA Placer were aware of the improvements and did not object, which constituted a waiver of the lease provision requiring prior written approval.

The district court held that the alleged reliance was related to the lease, not the alleged right of first refusal. It also held that if Plaintiffs made improvements to the real property, it was in violation of the lease because there was no prior written approval. Finally, the court held that CDA Placer did not breach the alleged promise that Plaintiffs had a right of first refusal because

"plaintiffs exercised their Option" by making an offer to purchase the property. An option to purchase is different from a right of first refusal. A right of first refusal is "[a] potential buyer's contractual right to meet the terms of a third party's offer if the seller intends to accept that offer." *Black's Law Dictionary* 1325 (7th ed. 1999). CDA Placer did not give Plaintiffs an opportunity to purchase the real property under the same terms as IFG Timber purchased the property.

"When the trial court reaches the correct result by an erroneous theory, we will affirm the result on the correct theory." *Stapleton v. Jack Cushman Drilling & Pump Co. Inc.*, 153 Idaho 735, 740, 291 P.3d 418, 423 (2012). CDA Placer argued as one ground for its motion for summary judgment that the alleged agreement regarding the alleged right of first refusal was too vague to be enforced. Plaintiffs did not respond to this argument, and the district court did not address it. The Defendants have also raised that issue on appeal, and Plaintiffs have not responded to it.

The Defendants served an interrogatory on Plaintiffs requesting "[t]he common and legal description of the real property subject to the 'right of first refusal'" and "[a]ll other essential or relevant terms or conditions of the 'right of first refusal.'" In response, Plaintiffs stated that "[n]o legal description was specified, but it was mutually understood that it would be the property currently used and occupied by Plaintiffs" and that during informal meetings from 1995 until approximately 2009, agents of CDA Placer often stated that it would "give Plaintiffs the first opportunity to purchase the land" if CDA Placer decided to sell it. Plaintiffs did not assert that it was limited to the one-half acre they were leasing. In their verified complaint, Plaintiffs alleged that CDA Placer had sold to neighbors "a portion of the property used by Plaintiffs."

"Like any contract for the sale of land, an oral agreement 'must be complete, definite, and certain in all its terms, or contain provisions which are capable in themselves of being reduced to certainty,' before it will be specifically enforced by operation of the doctrine of part performance." *Chapin v. Linden*, 144 Idaho 393, 396, 162 P.3d 772, 775 (2007). "Equitable estoppel assumes the existence of a complete agreement . . . ." *Lettunich v. Key Bank Nat. Ass'n*, 141 Idaho 362, 367, 109 P.3d 1104, 1109 (2005). "[T]he doctrine of promissory estoppel is intended as a substitute for consideration and not as a substitute for an agreement between the parties." *Smith v. Boise Kenworth Sales, Inc.*, 102 Idaho 63, 68, 625 P.2d 417, 422 (1981) (citation omitted).

5

The description of the real property "must adequately describe the property so that it is possible for someone to identify 'exactly' what property the seller is conveying to the buyer." *Ray v. Frasure*, 146 Idaho 625, 629, 200 P.3d 1174, 1178 (2009). Parol evidence may not be resorted to "for the purpose of ascertaining and locating the land about which the particular parties negotiated." *Allen v. Kitchen*, 16 Idaho 133, 142, 100 P. 1052, 1055 (1909). The alleged agreement that the property subject to the right of first refusal was "the property currently used and occupied by Plaintiffs" was too vague to be enforced.

In *White v. Rehn*, 103 Idaho 1, 644 P.2d 323 (1982), "[t]he description of the land as stated in the earnest money receipt [was] 'all land west of road running south to the Rehn farmstead containing 960 acres. Exact acreage to be determined by survey. Price to be adjusted up or down at the rate of $243.00 per acre Cassia County, State of Idaho.'" *Id*. at 3, 644 P.2d at 325. This Court held: "There is nothing in the description with which to pinpoint exactly which 960 acres was to be transferred. As such, this description is ambiguous on its face and will not support an award for specific performance or damages." *Id*. The appellant invited this Court to "allow extrinsic or parol evidence to clarify the terms of the written agreement." *Id*. We refused to do so and continued to adhere to our decision in *Allen v. Kitchen*. *Id*.

In *Lexington Heights Development, LLC v. Crandlemire*, 140 Idaho 276, 92 P.3d 526 (2004), the parties entered into a written contract under which the plaintiff would purchase 90 acres of the defendant's 95-acre parcel of land. *Id*. at 278, 92 P.3d at 528. The contract provided that the excluded property was

> the existing residential dwelling situated on the Premises together with no more than five (5) acres immediately surrounding the proposed residential development (which five (5) acres will include the existing tennis court, volleyball court, and swimming pool), the precise size, location, dimensions and configuration of which shall be mutually determined by Seller and Buyer.

*Id*. We held that the description of the property was insufficient to identify the real property excluded from the sale. *Id*. at 282, 92 P.3d at 532.

In *Bauchman-Kingston Partnership, LP v. Haroldsen*, 149 Idaho 87, 233 P.3d 18 (2008), the parties entered into a contract to sell incrementally 200 acres of real property. *Id*. at 89, 233 P.3d at 20. The parties completed the sales of the first three parcels, involving nearly 200 acres of land. *Id*. at 90, 233 P.3d at 21. One of the provisions in the contract stated that the seller would convey a parcel described as "54.59 A S ½ NE ¼, 30 A N ½ SE ¼ LESS 6.84 A. SEC 1

6

T2 N LESS 32.75 A + QUANSET" [sic] and a final parcel described as "RESIDENCE AND 4.9 ACRES." *Id*. at 89–90, 233 P.3d at 20–21. The district court held on the defendants' motion for summary judgment that the property description was inadequate, and this Court affirmed on appeal. We stated, "A property description that does not allow the court to pinpoint exactly what acreage is to be transferred is inadequate." *Id*. at 91, 233 P.3d at 22. We held that "there is no property description for the retained quonset, or for the last conveyance comprised of the residence and 4.9 acres." *Id*.

The description of the property subject to the alleged right of first refusal was too vague for such right to be enforceable. Therefore, we need not address the other issues raised on both sides regarding the right of first refusal.

**B. The alleged promise to purchase Plaintiffs' buildings.** In their complaint, Plaintiffs alleged that "[a]t or about the time of entering into the lease agreement, and at numerous times over the course of the lease, [CDA Placer's president] represented to Plaintiffs that, in the event that Coeur d'Alene Placer elected to terminate the Lease, Coeur d'Alene Placer would purchase the buildings from Plaintiffs." In answer to an interrogatory, Plaintiffs stated that the purchase price of the buildings was to be "[t]he assessed value at the the [sic] time of sale, plus the value of improvements thereto" and that the consideration given for the agreement was "[n]one other than continued maintenance of the property and payment of annual rents to Coeur d'Alene Placer."

One of the grounds asserted by the Defendants in support of their motion for summary judgment was that there was no evidence that Plaintiffs changed their position to their detriment in reliance upon any promise, and another ground was that there was no consideration for the alleged agreement to purchase the buildings. In response, Plaintiffs recited their claim that CDA Placer had agreed to purchase the buildings and then wrote, "Plaintiffs having sufficiently raised the issue of an underlying agreement, this court is free to examine the issues regarding reliance and equitable or promissory estoppel." During oral argument on the Defendants' motion for summary judgment, Plaintiffs stated that their defense to the statute of frauds also applies to the issues of promissory estoppel and specific performance. The argument in their brief with respect to equitable estoppel simply referred the court to specific allegations in their complaint stating that they relied upon the promises by renewing the lease, continuing to reside on the property, and maintaining and improving the buildings and property. In their answer to an interrogatory,

they stated that the maintenance and improvements were the "[p]lacement of an existing well into operation with a pump and well-house, removing large amounts of rubbish and 'junk,' restoring a garden plot, and general maintenance to the land and buildings." The district court held that the alleged reliance was insufficient to create a genuine issue of material fact because such actions were in connection with the lease.

Promissory estoppel is a substitute for consideration. *Smith v. Boise Kenworth Sales, Inc.*, 102 Idaho 63, 68, 625 P.2d 417, 422 (1981).

> In order to allege the defense of promissory estoppel, it must be shown: (1) the detriment suffered in reliance was substantial in an economic sense; (2) the substantial loss to the promisee acting in reliance was or should have been foreseeable by the promisor; and (3) the promisee must have acted reasonably in justifiable reliance on the promise as made.

*Mohr v. Shultz*, 86 Idaho 531, 540, 388 P.2d 1002, 1008 (1964).

On appeal, Plaintiffs do not address the issue of promissory estoppel. Instead, they focus on equitable estoppel. The elements of equitable estoppel are slightly different from the elements of promissory estoppel. The elements of equitable estoppel are:

> (1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth; (2) that the party asserting estoppel did not know or could not discover the truth; (3) that the false representation or concealment was made with the intent that it be relied upon; and (4) that the person to whom the representation was made, or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice.

*Ogden v. Griffith*, 149 Idaho 489, 495, 236 P.3d 1249, 1255 (2010)

For equitable estoppel, the party to whom the representation was made must have relied upon it to that party's prejudice. For promissory estoppel, the detriment suffered in reliance must be substantial in an economic sense.

Plaintiffs do not contend that they purchased the buildings in reliance upon any representations made by CDA Placer. Once they purchased the buildings, they had to either move them or enter into the land lease, and they contend that the buildings cannot be moved without significant damage to them. They chose to enter into the land lease, and they used one of the buildings as their residence. The annual rental payment for the lease term ending June 20, 2014, was $2,250.00.

8

The reliance for promissory estoppel must be based upon the representation made. Where one of the buildings was Plaintiffs' residence, they obviously needed water. Installing a pump in the existing well and building a well house were to satisfy that need. Removing junk from the property and restoring a garden plot were also simply actions that would be taken in connection with residing on the property. The actions allegedly taken in reliance upon the promise to purchase the buildings were not to the Plaintiffs' detriment. They were to make the property more livable during the almost nineteen years that they leased the real property before the lease expired. In addition, there is no evidence that these actions were substantial in an economic sense. The district court did not err in dismissing Plaintiffs' claim of promissory estoppel. There was simply no evidence to support it.

**III.**

**Did the District Court Err in Stating that Defendants Have the Right to Retain Ownership of the Buildings without Compensation to Plaintiffs?**

In their complaint, Plaintiffs alleged a claim for unjust enrichment. They asserted that "[i]n the event that Plaintiffs should vacate the Property, it will be necessary to leave Plaintiffs' buildings upon the Property, as they cannot be removed without damaging them to the point of rendering them essentially worthless." At the time of the hearing on the Defendants' motion for summary judgment, Plaintiffs had not yet vacated the property. This claim was based upon the assumption that they would leave the buildings rather than attempting to move them once they vacated the land. The district court held that the Plaintiffs were not entitled to a claim for unjust enrichment because they would not have conferred a benefit upon the Defendants that it would be inequitable to retain due to the provisions of the lease. In so holding, the court wrote: "CDA Placer is entitled to any benefits flowing from the Land Lease; this includes the right to retain ownership of any improvements. This was the benefit of the bargain under the Land Lease." Plaintiffs assert that "[t]he District Court Erred in Holding that Respondents Have the Right to Retain Ownership of the Buildings and Improvements on the Property Without Compensation to Plaintiffs." It is not clear that the court so held. The judgment did not vest ownership of the buildings in either of the Defendants.

The judgment stated:

Counterclaimant, IFG TIMBER, LLC, has prevailed on its Counterclaim and is hereby entitled to and granted possession of the subject property, a writ of ejectment and awarded damages in the amount of $6.16 per day from July 1, 2014 to the date of entry of this Judgment and continuing until Plaintiffs/Counterdefendants, the Nicholsons, have vacated the subject property, with interest thereon as provided by law from the date of entry of this Judgment, until satisfied in full.

The lease contains two applicable provisions:

**9. ALTERATIONS OR ADDITIONS.** . . . . Any improvements, alterations or improvements made by TENANT shall become the property of LANDLORD unless removed by TENANT at the termination of occupancy as provided herein.

. . . .

**18. SURRENDER OF THE PROPERTY.** TENANT shall at the expiration or other termination of this Lease remove all of TENANT's goods and effects from the Property (including, without limitation, TENANT's cabin, trailer, improvements, equipment and personal property of all kinds). Subject thereto, TENANT shall deliver the Property to LANDLORD in the same condition as it was in at the commencement of the Term, or such better condition as it was put in during the Term, reasonable wear and tear and damage by fire or other casualty only excepted. In the event of TENANT's failure to remove any of TENANT's property from the Property, LANDLORD is hereby authorized, without liability to TENANT for loss or damage thereto, and at the sole risk of TENANT, to remove and store any of such property at TENANT's expense, or to retain such property under LANDLORD's control, or to sell at public or private sale, without notice, any or all of the property not so removed and to apply the net proceeds of such sale to the payment of any sum due hereunder, or to destroy such property. Further, to secure TENANT's obligations under this Section 18, LANDLORD is hereby granted a security interest in said property (including proceeds and after acquired property) under Article 9 of the Uniform Commercial Code, as adopted in the Idaho Code.

Paragraph 9 states that any improvements made by the tenant shall become the property of the landlord if they are not removed by the tenant "at the termination of the occupancy as provided herein." The words "as provided herein" obviously refer to Paragraph 18. There is nothing in the record indicating that the buildings were improvements made by Plaintiffs. During oral argument, Plaintiffs' counsel stated that the buildings had been moved onto CDA Placer's property, but he did not state that it was Plaintiffs who did so. They apparently purchased the buildings after some prior owner had moved them onto the property. When asked in an interrogatory what improvements they had made to the real property, Plaintiffs did not state that they had moved the buildings onto the property. They did install a pump in the existing

10

well, but they have not claimed that they cannot remove it. Even if they leave it, there is Paragraph 18.

Under Paragraph 18 of the lease, if Plaintiffs do not remove the buildings or the pump, the landlord has four options. The landlord could (a) "remove and store any of such property at TENANT's expense," (b) "retain such property under LANDLORD's control," (c) "sell at public or private sale, without notice, any or all of the property not so removed and to apply the net proceeds of such sale to the payment of any sum due hereunder," or (d) "destroy such property."

The lease states, "Further, to secure TENANT's obligations under this Section 18, LANDLORD is hereby granted a security interest in said property (including proceeds and after acquired property) under Article 9 of the Uniform Commercial Code, as adopted in the Idaho Code." There is no contention that the security interest is not valid.[1] The secured party's obligations would be subject to Idaho Code section 28-9-602. I.C. § 28-9-601(a). Section 28-9-602 sets forth various provisions of the Idaho Uniform Commercial Code that cannot be waived or varied to the extent that they give rights to a debtor or obligor and impose duties on the secured party. The provisions that cannot be waived include Idaho Code section 28-9-608(a), which requires the secured party to apply the proceeds of any sale to specified expenses and secured obligations and to pay the debtor any surplus remaining; Idaho Code section 28-9-610(b), which requires that "[e]very aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable"; and Idaho Code sections 28-9-620, 28-9-621, and 28-9-622, which specify the rules for accepting the collateral in full or partial satisfaction of the secured obligation. I.C. § 28-9-602(5), (7), (10). Therefore, there is no merit to the assertion that the lease contains a forfeiture clause. There is also no merit to the contention that if the buildings are sold, Plaintiffs would not be entitled to any surplus remaining from the sale proceeds after applying them as provided in the Idaho Code section 28-9-608(a). The provision in the lease purporting to grant the lessor the right to destroy the buildings would be invalid to the extent that it was in conflict with Idaho Code section 28-9-602.

---

[1] Plaintiffs contend that the Defendants have not shown that the security interest was perfected. Perfection is not required for a security interest to be valid. Perfection governs priority over a conflicting security interest in the same collateral.

# IV.

## Did the District Court Err in Entering Judgment in Favor of IFG Timber on Its Counterclaim?

IFG Timber filed a counterclaim against Plaintiffs alleging that they had remained in possession of the real property after their lease had expired, that they continue to withhold possession of the real property from IFG Timber, and that it was entitled to damages in an amount not less than the monthly rental value of the property. It requested restitution of the property and, if necessary, a writ of ejectment. The district court granted IFG Timber a judgment stating that it was entitled to possession of the real property, a writ of ejectment, and damages in the sum of $6.16 per day from July 1, 2014, until Plaintiffs vacate the property. Plaintiffs contend that the district court erred in granting judgment on IFG Timber's counterclaim for three reasons.

First, Plaintiffs allege that IFG Timber's counterclaim was for common law ejectment, but in granting summary judgment the district court characterized it as a claim for unlawful detainer. IFG Timber titled its counterclaim "COUNTERCLAIM BY IFG TIMBER LLC FOR EJECTMENT AND DAMAGES" and did not mention in its counterclaim the unlawful detainer statute, nor did it include any wording that would refer to it other than the request in the prayer for an award of attorney fees pursuant to Idaho Code section 6-324, which provides for the award of attorney fees in an action brought under the provisions of Chapter 3 of Title 6, which is the chapter of the Idaho Code setting forth the statutory law for forcible entry and unlawful detainer actions.

In IFG Timber's memorandum in support of its motion for summary judgment on its counterclaim under the section titled "LEGAL ANALYSIS, it began by stating, "The Nicholsons are Guilty of Unlawful Detainer of the Property as a Matter of Law." In granting IFG Timber's motion for summary judgment, the district court construed the counterclaim to be a claim for unlawful detainer. The relevant statutory definition of unlawful detainer includes "[w]hen he [the tenant] continues in possession . . . of the property . . . after the expiration of the term for which it is let to him, without the permission of his landlord, or the successor in estate of his landlord." I.C. § 6-303(1). There is no contention that the factual allegations in the counterclaim would not state a claim for unlawful detainer. There is no dispute that Plaintiffs were tenants of real property for a term less than life, that they continued in possession of the property after the

12

expiration of their lease with CDA Placer, and that IFG Timber is a successor to the estate of CDA Placer. Likewise, Plaintiffs do not contend that they were misled or prejudiced by the title to the counterclaim. "A party alleging error on appeal must also show that the alleged errors were prejudicial." *Saint Alphonsus Diversified Care, Inc. v. MRI Assocs., LLP*, 157 Idaho 106, 122, 334 P.3d 780, 796 (2014). "[A]lleged errors not affecting substantial rights will be disregarded." *Weinstein v. Prudential Prop. and Cas. Ins. Co.*, 149 Idaho 299, 310, 233 P.3d 1221, 1232 (2010). Therefore, the district court did not err in characterizing the counterclaim as one for unlawful detainer.

Plaintiffs next contend that "even if the Counter-claim could be deemed a claim for Unlawful Detainer, IFG's inclusion of a claim for damages within the same was improper." They cite for that proposition *Coe v. Bennett*, 39 Idaho 176, 181, 226 P. 736, 737 (1924). In the *Coe* case, the Court held that an action for unlawful detainer could not be joined in a single count with "a cause of action in equity to cancel the sale agreement and for a money judgment for a breach of the same." *Id*. At the time *Coe* was decided, there was a statute stating that causes of action could be joined in the same complaint only if all of the causes of action belonged to one of six classes of cases. Idaho Comp. Stat.§ 6688 (1919). One of the grounds for a demurrer was that "several causes of action have been improperly united." Idaho Comp. Stat. § 6689 (1919). The claims alleged in *Coe* did not belong to the same class of cases. Both statutes were repealed in 1975. Ch. 242, § 1, 1975 Idaho Sess. Laws 651, 651 (at the time of their repeal the statutes were codified as Idaho Code sections 5-606 and 5-607).

Finally, Plaintiffs contend that the counterclaim did not include a sufficient description of the property they were leasing. They rely upon Rule 9(j) of the Idaho Rules of Civil Procedure, which states, "In an action for the recovery of real property, the property at issue must be described sufficiently as to enable an officer, upon execution, to identify it." Plaintiffs alleged in their complaint that "[t]he Property is located at 2867 Prichard Creek Road, at the site of the old Eagle City settlement." IFG Timber filed as one document an answer and counterclaim. In its answer, IFG Timber stated that it "admits that the mailing address of the plaintiffs is 2867 Prichard Creek Road, Wallace, Idaho, but denies that this is an adequate legal description of real property alleged in the complaint and denies the remainder of the allegations in the paragraph." In its counterclaim, it alleged that Plaintiffs had leased "a portion of the real property described in Exhibit A," which was the legal description of the entire 3,000 acres it had purchased.

13

Plaintiffs have not shown any prejudice from the failure to more particularly describe the real property in the counterclaim. There was no dispute about the real property they were leasing. As stated above, any error not affecting a substantial right will be disregarded.

The judgment in this case does not describe the real property. It simply states, "Counterclaimant, IFG TIMBER, LLC, has prevailed on its Counterclaim and is hereby entitled to and granted possession of the subject property, a writ of ejectment and [damages as specified]." If it becomes necessary to enlist the assistance of the sheriff to remove Plaintiffs from the property, the district court can issue a writ of execution for restitution of premises pursuant to Idaho Code section 6-311C and describe the property in the writ with sufficient particularity to enable the sheriff to identify it. The street address would probably be sufficient to enable an officer to identify it.

## V.

### Is IFG Timber Entitled to an Award of Attorney Fees on Appeal?

IFG Timber seeks an award of attorney fees on appeal pursuant to Idaho Code section 6-324. Because it is the prevailing party on appeal, it is entitled to an award of attorney fees under that statute.

## VI.

### Conclusion.

We affirm the judgment of the district court, we award the Respondents costs on appeal, and we award IFG Timber attorney fees on appeal.

Chief Justice BURDICK, and Justices JONES, HORTON and BRODY **CONCUR.**

14