603 P.2d 597

Paul PALMER, Plaintiff-Appellant, Cross-Respondent,

v.

IDAHO BANK & TRUST OF KOOSKIA, an Idaho Bank, Defendant-Respondent, Cross-Appellant.

No. 12625.

Supreme Court of Idaho.

Dec. 4, 1979.

Paul Palmer, pro se.

William H. Foster, Grangeville, for appellee.

DONALDSON, Chief Judge.

This is an appeal from a summary judgment rendered in favor of defendant-respondent Idaho Bank & Trust of Kooskia (hereinafter referred to as IB&T), which dismissed with prejudice plaintiff's claim involving a damage action against IB&T for a breach of fiduciary duty to one of its customers, plaintiff-appellant Paul B. Palmer. IB&T also cross-appeals the district court's denial of a motion to strike portions of Palmer's amended complaint, its denial

of a motion to compel answers to interrogatories, its denial of attorney's fees to IB&T, and its denial of a motion to dismiss Palmer's cause of action under I.R.C.P. 12(b)(6) for failure to state a cause of action for which relief could be granted.

The facts of this case are as follows:

On or shortly after December 20, 1974, Palmer received notice from the United States Internal Revenue Service of its claim for delinquent taxes for the years 1972 and 1973. Palmer received additional notices for these claims through a "Statement of Adjustment to Your Account" on or about August 25, 1975 and through a "Final Notice Before Seizure" dated November 17, 1975. In the "Final Notice Before Seizure" Palmer was advised to avoid seizure action for the amount in question. The notice stated, in part:

> "[F]ull payment of the amount due shown above must reach this office within 10 days from the date of this notice. . . . Otherwise, 10 days after the date of this notice, and with no further notice to you, any salary or wages due you will be levied upon by serving a notice of levy upon your employer. *Bank accounts*, receivables, commissions or other income, property or rights to property belonging to you may also be seized." (emphasis added)

For reasons which remain in dispute and which are not relevant to this action, Palmer did not pay the IRS the amount which it claims was owed.

On or about April 5, 1976, Palmer deposited to his checking account at IB&T's Kooskia office the sum of $3,000 and on April 14 he deposited another $25. On April 15, the balance of his checking account stood at $1,202.51. That same day, the IRS delivered a notice of levy to IB&T on Palmer's checking account and on April 16, IB&T issued a cashier's check in the amount of $1,136.95 pursuant to the Notice of Levy, payable to the Internal Revenue Service, and charged Palmer's account with that amount. Palmer was mailed a notice of that charge at his Kooskia, Idaho address.

Palmer then brought suit against IB&T, charging that it breached its fiduciary duty to him by failing to warn him at the time he deposited his funds in IB&T's custody that such deposits could be subject to an IRS levy without judicial order or a court judgment. Palmer contends that IB&T willfully and intentionally disregarded the law and his constitutional rights, thereby depriving him of his property without due process of law.

Thereafter, IB&T moved to dismiss Palmer's complaint pursuant to I.R.C.P. 12(b)(6) and filed a motion for attorney's fees pursuant to I.C. § 12-121. Although the record does not reflect it IB&T's motion to dismiss was denied. Following this denial, Palmer filed an amended complaint.

On August 30, 1976, IB&T propounded interrogatories to Palmer, which were partially answered on September 16. Palmer refused to answer Interrogatories Nos. 1, 2, 4 and 6, and IB&T filed a motion to compel answers to those interrogatories a day later. The district court compelled Palmer to answer Interrogatories 1, 2 and 4, which dealt with whether Palmer had received notice from the IRS of his delinquent taxes, whether he had received the "Final Notice Before Seizure" before IB&T levied on his account, and whether he had filed any appeal or challenged the IRS's assessment of his tax delinquency. The court, however, did not require Palmer to answer Interrogatory No. 6, where IB&T requested Palmer to provide it with the specific law which IB&T had violated in support of his position that IB&T had violated his constitutional rights. IB&T then moved for summary judgment, which the court granted in May, 1977, dismissing Palmer's case with prejudice but denying IB&T's motion for attorney's fees. From summary judgment, Palmer timely filed his appeal with this Court and IB&T timely filed its cross-appeal, asking for attorney's fees.

On appeal, we address two significant issues:

1. Did the defendant-respondent bank have a fiduciary duty to notify Palmer that his account could be subjected to an IRS levy, without court order or judgment?

2. Should the trial court have granted IB&T's motion to dismiss, its motion to strike certain paragraphs of Palmer's amended complaint, its motion to compel Palmer to answer Interrogatory No. 6, and its motion for attorney's fees?

It should be emphasized at the outset that the nature of this case involves an appeal from summary judgment rendered in favor of the bank. To determine whether summary judgment was proper, the conditions under which it was granted must be reviewed.

Ordinarily, summary judgment should be granted only if there is no genuine issue of material fact after the pleadings, depositions, admissions and affidavits have been construed in a light most favorable to the opposing party. I.R.C.P. 56(c); *Casey v. Highlands Ins. Co.*, Idaho, 600 P.2d 1387 (1979); *Farmers Ins. Co. of Idaho v. Brown*, 97 Idaho 380, 544 P.2d 1150 (1976). The Supreme Court must construe the record in favor of the party opposing summary judgment and accord him the benefit of all reasonable inferences. *Straley v. Idaho Nuclear Corp.*, 94 Idaho 917, 500 P.2d 218 (1972).

In applying these principles to the facts of this case, we address Palmer's argument that summary judgment should not have been granted because IB&T owed him a fiduciary duty of notice, at the time he deposited his funds, that his bank account could be levied upon without court order or adjudication. This question of law was unsupported by any authority indicating that the bank owed a fiduciary duty to Palmer[1]

---

1. Palmer's sole supporting authority for the proposition that the bank owed him a fiduciary duty to warn of the possibility of an IRS levy is former I.C. § 26-1007, which was replaced by I.C. § 26-717, added by 1979 Idaho Sess.Laws, ch. 41, § 2, p. 62. Former I.C. § 26-1007 provides that, where an adverse claimant makes demand on a customer's bank deposit, the bank is not obligated to recognize the adverse claim unless the adverse claimant procures a restraining order, injunction or other appropriate process against the bank, or exe-

and the district court was unable to find authority in support of this proposition.[2] It therefore held as a matter of law that IB&T owed no duty to Palmer.

In addition, a review of the pleadings, admissions and affidavits indicates there was no genuine issue as to any material fact. While the pleadings reveal that the parties are in dispute as to whether Palmer owed the amount in question to the IRS,[3] that dispute is not germane to the issue of whether the bank owed a fiduciary duty to Palmer. Furthermore, in his answers to interrogatories Palmer admitted the receipt of all four notices, including the Final Notice of Seizure, dated November 17, 1975. While Palmer argues that he did not understand the legal effect of a levy, based on his belief that levy is not a commonly used term, we find this argument unpersuasive in light of the fact that the Final Notice read: *"Bank accounts,* receivables, commissions, or other income, property or rights to property belonging to you *may also be seized."* (emphasis added).

■ While there may be some question as to whether a person of reasonable intelligence could understand the legal effect of a "levy," it is hard to believe that a person of average intelligence would misunderstand the effect of a notice which informed the receiver that his property would be subject to seizure. Palmer knew the consequences of failing to pay the amount claimed by the IRS and after receipt of these notices, placed additional deposits in the bank. Thus, IB&T had no duty to inform him of something which, prior to seizure, he already knew or reasonably should have known. Construing the pleadings, admissions and affidavits in a light most favorable to Palmer, it was proper for the district court to render summary judgment in favor of IB&T, and the order of the district court is affirmed.

■ Since the trial court properly granted summary judgment in favor of IB&T, we need not address the question of whether the lower court should have granted IB&T's motion to dismiss, its motion to strike certain paragraphs of Palmer's amended complaint, and its motion to compel Palmer to answer Interrogatory No. 6. Because an award of attorney's fees is within the sound discretion of the trial court, under I.C. § 12–121,[4] it is incumbent upon

---

cutes a bond, indemnifying the bank from any loss on account of the bank's payment of the adverse claim.

In effect, Palmer argues that the IRS was an adverse claimant and that the bank was under no obligation to recognize the "adverse claim" without court order or bond. However, it should be noted that "the Bank Act" does not define the term "adverse claimant" and former I.C. § 26–101 does not extend the scope of the statute to cover the federal government or its executive subdivisions. Even if § 26–1007 applied to cover the United States as an adverse claimant, the Internal Revenue Code, being a federal statute, would control over any state statute prescribing procedures to be followed in connection with levies. *Hoye v. United States,* 277 F.2d 116 (9th Cir. 1960).

2. Difficulty in finding support for Palmer's proposition may stem from the fact that at least 46 states, including Idaho, have held that the relationship between a bank and a depositor is that of debtor and creditor, and the funds deposited by the depositor become the property of the bank with the bank assuming the obligation to pay out an equal amount on demand. 9 C.J.S. Banks & Banking § 273 at 556–58; *Mey-*

er v. *Idaho First Nat. Bank,* 96 Idaho 208, 525 P.2d 990 (1974); *accord, Peterson v. Idaho First Nat. Bank,* 83 Idaho 578, 367 P.2d 284 (1961). Thus, the relationship between the bank and its depositor cannot be classified as that of principal and agent, or trustee and beneficiary. 9 C.J.S. Banks & Banking § 273 at 559.

3. At oral argument on IB&T's motion for summary judgment, the issue of whether Palmer owed the amount in question to the IRS was recognized as being outside the jurisdiction of the district court. Further, the IRS was not a party to the immediate action and the issue could not have been resolved even if there had been jurisdiction.

4. I.C. § 12–121 provides:

"In any civil action, the judge *may* award reasonable attorney's fees to the prevailing party or parties, provided that this section shall not alter, repeal or amend any statute which otherwise provides for the award of attorney's fees." (emphasis added).

This language makes such an award discretionary and an appellant disputing the denial of attorney's fees would have to show an abuse of discretion by the lower court in denying those

IB&T to show an abuse of discretion by the lower court in refusing to do so. As a grounds for providing it with attorney's fees, IB&T argues that Palmer's suit was "frivolous." It should be noted that the lower court paid much attention to the fact that Palmer appeared *pro se* and it could have properly concluded that Palmer believed his suit was not "frivolous." We cannot say, as a matter of law, that the lower court abused its discretion in denying

attorney's fees to IB&T and we affirm the lower court on this issue.

Costs to respondent pursuant to I.A.R. 40.

SHEPARD, BAKES, McFADDEN and BISTLINE, JJ., concur.

fees. Ordinarily, motions for attorney's fees must be addressed to the sound discretion of the trial court. *See* I.C. § 32–704; *Tolman v. Tolman*, 93 Idaho 374, 461 P.2d 433 (1969).