681 P.2d 1001

Dean SHAW and Alice Shaw, husband and wife, Paul Crane and LaVieve Crane, husband and wife, Plaintiffs-Appellants,

v.

CITY OF RUPERT, a municipal corporation, Hamilton & Voeller, Inc., a corporation, d/b/a H & V Engineering, Inc., and Galey Construction Company, Inc., a corporation, Defendants-Respondents.

H & V ENGINEERING, INC., an Idaho corporation, Cross-Claimant,

v.

CITY OF RUPERT, a municipal corporation, and Galey Construction Company, Inc., a corporation, Cross-Defendants.

CITY OF RUPERT, a municipal corporation, Cross-Claimant,

v.

H & V ENGINEERING, INC., an Idaho corporation, and Galey Construction Company, Inc., an Idaho corporation, Cross-Defendants.

GALEY CONSTRUCTION COMPANY, INC., an Idaho corporation, Cross-Claimant,

v.

CITY OF RUPERT, a municipal corporation, and H & V Engineering, Inc., an Idaho corporation, Cross-Defendants.

No. 14482.

Supreme Court of Idaho.

May 16, 1984.

Randolph Calvin Stone, of Parsons, Smith, Stone & Fletcher, Burley, for plaintiffs-appellants.

Thomas B. High, of Benoit, Alexander & Sinclair, Twin Falls, for defendant-respondent, Galey Construction Company, Inc.

Nickolas J. Dibert, of Quane, Smith, Howard & Hull, Boise, Donald J. Chisholm, of Goodman, Duff & Chisholm, Rupert, for defendant-respondent, City of Rupert.

Jeffrey A. Strother, and Kirk R. Helvie, of Moffatt, Thomas, Barrett & Blanton, Chartered, Wilbur Nelson, of Nelson, Westberg & McCabe, Boise, for defendant-respondent, H & V Engineering, Inc.

## ON REHEARING

DONALDSON, Chief Justice.

A sewage lagoon system, designed by H & V Engineering, Inc., constructed by Galey Construction Co., and operated by the City of Rupert, is located immediately west of the real property owned by the plaintiffs, the Shaws and the Cranes. On March 16, 1979, one of the lagoons flooded, and the partially treated sewage flowed across the plaintiffs' land for the distance of approximately 1½ miles. Based upon the alleged damages that occurred from the flooding, the plaintiffs brought this suit against the City of Rupert, H & V Engineering, Inc., and Galey Construction Company.

The plaintiffs alleged that the defendants were negligent in the design, construction, operation and maintenance of the sewage lagoon. Each of the defendants answered, and filed various cross-claims. Defendants also moved for partial summary judgment, contending that plaintiffs were not entitled to recover damages for diminution in value of their land due to potential future flooding. The district court granted the defendants' motion, and then certified the partial summary judgment pursuant to I.R.C.P. 54(b). This appeal followed.

For many years, this Court has followed the rule enunciated in *Young v. Extension Ditch Co.*, 13 Idaho 174, 182, 89 P. 296, 298 (1907), as to the measure of damages for injury to real property:

"If land is taken or the value thereof totally destroyed, the owner is entitled to recover the actual cash value of the land at the time of the taking or destruction with legal interest thereon to the time of the trial.

"If the land is permanently injured but not totally destroyed, the owner will be entitled to recover the difference between the actual cash value at a time immediately preceding the injury and the actual cash value of the land in the condition it was immediately after the injury, with legal interest thereon to the time of the trial.

"If the land is temporarily but not permanently injured, the owner is entitled to recover the amount necessary to repair the injury and put the land in the condition it was at the time immediately preceding the injury, with legal interest thereon to the time of the trial."

See also Smith v. Big Lost River Irrigation District, 83 Idaho 374, 364 P.2d 146 (1962); Alesko v. Union Pacific Railroad, 62 Idaho 235, 109 P.2d 874 (1941); Falk v. Humbird Lumber Co., 36 Idaho 1, 208 P. 404 (1922); Boise Valley Construction Co. v. Kroeger, 17 Idaho 384, 105 P. 1070 (1909).

In this case, the district court's memorandum opinion states that "[t]here is no indication in the record before the court that future flooding is an inevitable consequence of the existence of the sewage treatment lagoons. In the absence of clear proof that the flooding problem is certain, it is improper to characterize the injury as permanent." The court, therefore, ruled as a matter of law that plaintiffs are precluded from recovering for alleged diminution in the value of their land, since the anticipated future flooding is not a permanent injury.

■ We have previously stated the rule that an injury is temporary "if the cause of the injury is abatable or preventable and the injury capable of rectification by reasonable restoration." Alesko v. Union Pacific Railroad, supra, 62 Idaho at 240, 109 P.2d 874. However, in this case, the district court did not apply this rule, but determined instead that the injury was temporary because future flooding was not "certain." We find the district court's "certainty test" to be too restrictive, and hold that it is not necessary to prove future certain-

ty in order to show permanent injury, but rather only future probability. McCormick, Damages for Anticipated Injury to Land, 37 Harv.L.Rev. 574, 595 (1924). We note that the test we cited in Alesko is not incompatible with the test of "future probability" which we today enunciate. In order for one to prove future probability, and thereby show permanent injury (via the test we express today), the cause of the injury would most likely be unabatable, thus indicating (via the Alesko test) an injury that would not be temporary.

The defendants argue that under the case of Lavin v. Panhandle Lumber Co., 51 Idaho 1, 1 P.2d 186 (1931), the plaintiffs cannot recover damages for anticipated flooding but must bring a new action after every flood. However, in Lavin the issue centered around the running of the statute of limitations. Nothing we read in Lavin precludes a party from pleading and attempting to prove diminution in value as the plaintiffs attempted to do here.

■ On a motion for summary judgment, the evidence is to be construed most favorably toward the non-moving party. Taylor v. Choules, 102 Idaho 222, 628 P.2d 1056 (1981); Palmer v. Idaho Bank & Trust of Kooskia, 100 Idaho 642, 603 P.2d 597 (1979); McKinley v. Fanning, 100 Idaho 189, 595 P.2d 1084 (1979). Here, the direct testimony of the plaintiffs' engineer, although perhaps conflicting and self-contradictory, nevertheless raises a genuine triable issue of fact as to whether future flooding is probable. Therefore, we reverse the partial summary judgment and that portion of the order dated December 22, 1981, excluding evidence of other defects or problems with the lagoon, and remand for a trial on the issue.

Costs to appellants.

No attorney fees on appeal.

SHEPARD, and BISTLINE, JJ., concur.

BAKES, Justice, concurring in part and dissenting in part:

I concur with the majority's statement of law as it relates to the proof requisite to

establish the plaintiff's entitlement to damages for anticipated future flooding, *i.e.*, proof of *reasonable probability* of the alleged nuisance's indefinite continuance. However, it should be noted that, even viewing the evidence most favorably to the party against whom the summary judgment was rendered, as we must, *see Taylor v. Choules*, 102 Idaho 222, 628 P.2d 1056 (1981), the only evidence of reasonable probability presented suggests that an indefinite continuance of the nuisance would occur *only* if the lagoons are improperly operated or maintained in the future. Max Williams, plaintiffs' engineer, upon whose deposition plaintiffs' claim rests, uses the word "inevitable" in referring to future flooding, but only in referring to the operation and maintenance of the lagoons.

"Q. Do you have an opinion as to whether, within the bounds of reasonable scientific and engineering probabilities, it is more likely than not that the lagoons which you observed will breach in the future?

"A. Well, again, there has to be a considerable amount of clarification as to what will be done as far as operation and maintenance is concerned, or many other factors related to what can happen in this time period.

"Q. I take it, then, that you would agree with me that no breach of any of the dikes which you observed is inevitable?

"MR. STONE: Based upon the facts as they exist right now?

"MR. STROTHER: Based on what he has seen and all the materials that he has considered.

"A. My opinion, based upon what I observed and based upon what I would project as the deterioration of the soil cement, if something is not done to correct that condition, and the action of the rodents, if something is not done to correct that condition, and the potential for wave action, if something is not done to correct that, I would say that failure is inevitable.

"Q. But isn't it obvious that the operator and owner of the dikes, at least, has the choice of whether or not to do any of the things which you believe have to be done?

"A. Sure.

"Q. So at least as we sit here today, a break is not inevitable, is it?

"A. It is inevitable unless action is taken.

"Q. Well, it's all up to the choice of the owner and the operator of the lagoon cells?

"A. Sure."

Thus, while there is sufficient evidence of future probability present to reverse the summary judgment as to the City of Rupert, which is the entity responsible for future operation and maintenance of the sewage lagoons, there is no evidence to support the plaintiffs' claim against the designer and the builder of the lagoons. If, as plaintiffs' engineer testified in his deposition, the probability of future failure will be determined by whether or not the owner and operator of the dikes provides the necessary maintenance, that can hardly be the responsibility of the designer and the builder of the lagoons. Thus, the trial court's summary judgment as to the designer and the builder should be affirmed.

If the trial court's summary judgment in favor of the designer and the builder were affirmed, leaving only the City of Rupert as the defendant in the action, the remaining claim for future flooding would in effect involve the question of inverse condemnation. An action for damages for permanent injury to land caused by probable future flooding in effect involves the granting of an easement to the tortfeasor, or a taking of the land for the tortfeasor's purposes. The same law review article relied upon in the majority opinion in establishing its "reasonable probability" standard, states:

"If ... the plaintiff should desire to end the controversy and obtain ultimate compensation in one action, he should have the option or power to do so, subject to two requirements: (1) that he, in effect,

tender to the defendant an easement to continue the damaging condition by seeking compensation upon the basis of the indefinite continuance of the nuisance; and (2) that he prove a reasonable probability of its indefinite continuance." McCormick, Damages for Anticipated Injury to Land, 37 Harv.L.Rev. 574, 597 (1937).

Thus, the plaintiffs should recognize that by obtaining present damages for anticipated future flooding, the defendant would not only be compensating plaintiffs for their losses, but would be acquiring the right, in the nature of an easement, to continue such flooding in the future without paying any additional or future compensation or damages. *Cf. Rueth v. State,* 103 Idaho 74, 644 P.2d 1333 (1982) (in inverse condemnation proceeding defendant's actions in causing water to back up on plaintiff's land amounted to a taking of an easement to flood for which just compensation must be paid). In this case the trial court granted a partial summary judgment against the plaintiffs on their claim of damages for diminution in value of their land due to potential future flooding, but denied summary judgment on that portion of plaintiffs' complaint asserting an inverse condemnation claim against the City of Rupert. Thus, by reversing this case on appeal as to the City of Rupert, those two actions, the action for damages based upon a reasonable probability of future flooding and the remaining action for inverse condemnation, are essentially the same and they should be consolidated and tried as one claim.

McFADDEN, J., pro tem, concurs.

BISTLINE, Justice, specially concurring.

The opinion by the Chief Justice reaches the correct result, but in my view does not respond to the issue addressed by the parties.

An element of requested damages in the plaintiffs' complaint is alleged diminution in the value of the plaintiffs' lands caused by the threat and risk of anticipated future flooding. The issue on appeal is alleged error in the court's holding in a summary

judgment proceeding that "[t]here is no indication in the record before the court that future flooding is an inevitable consequence of the existence of the sewage treatment lagoons. In the absence of clear proof that the flooding problem is certain, it is improper to characterize the injury as permanent."

On a motion for summary judgment the evidence and inferences properly drawn therefrom will be construed most favorably toward the nonmoving party, *Taylor v. Choules,* 102 Idaho 222, 628 P.2d 1056 (1981); *Palmer v. Idaho Bank & Trust of Kooskia,* 100 Idaho 642, 603 P.2d 597 (1979); *McKinley v. Fanning,* 100 Idaho 189, 595 P.2d 1084 (1979).

The plaintiffs, in support of their claim of error, point to this deposition testimony of their engineer, Mr. Williams:

"A. My opinion, based upon what I observed and based upon what I would project as the deterioration of the soil cement, if something is not done to correct that condition, and the action of the rodents, if something is not done to correct that condition, and the potential for wave action, *if something is not done to correct that, I would say that failure is inevitable.*

. . . .

"Q. When you make the statement that repair of the soil cement lining would be necessary to preserve the integrity of these sewage lagoons, is that to state that effectively what need to be done is to redesign, re-engineer and reconstruct the lining of the entire sewage lagoon system?

(Objection and ruling omitted.)

"A. Yes.

"Q. Based upon the facts available to you at this moment, and without drawing any assumptions as to future conduct of any party, *is there a significant risk that, because of the defects you have testified to, the lagoons will breach sometime in the future?*

"A. Yes.

. . . .

"Q. Well, it's true, is it not, that soil cement does require some upkeep to keep it in good condition?

"A. On the inside of those cells, there's practically no way to provide upkeep for them. The material is deteriorating. There's no way to put it back.

"Q. Well, you were anticipating, I guess, a few questions down the line. But if we were starting from scratch and the soil cement was new, you can maintain it, can you not?

"A. No, I don't agree that it can be maintained under these conditions.

"Q. What is it about these particular conditions that prevent the soil cement from being maintained?

"A. The weather conditions of freezing and thawing, and water action." (Emphasis added.)

This, so plaintiffs contend, establishes a genuine issue as to the risk of future flooding. Plaintiffs' appraisers in turn, accepting that the engineer's testimony was sufficient, did testify to significant diminished values on the two properties involved.

On the other hand, the testimony of Mr. Williams, who was the only engineer expert who testified, on cross-examination was perhaps a bit contradicting of his direct testimony:

"Q. Assuming that the conditions [of the structure of the Rupert sewage lagoon] remain the same, isn't it more likely than not that the lagoons will stand and not break?

"A. Well, I would say, to say *more likely than not,* I don't like to make that distinction, but I am saying that they are relatively safe under the present conditions.

"A. In my opinion, right now the embankments [of the Rupert sewage lagoon] appear to be in relatively stable condition. I do not see any immediate danger of failure.

"Q. At this time, do the structures present, in your opinion as an engineer, at this moment, an unreasonable risk of flooding at this time?

"A. Not today.

"Q. Yes, assuming the conditions [of the Rupert sewage lagoon] as they exist now, as you apparently observed them, continue, how likely [to breach again]?

"A. Under today's conditions, not likely.

"Q. It's not likely that it [the Rupert sewage lagoon] will fail?

"A. No."

The City of Rupert points directly to the issue on appeal:

"The Court should note that the only area of damages before it on this appeal concern Plaintiffs' claim that because the property has flooded, and because it allegedly might flood again, potential buyers of the property would be unwilling to pay what otherwise would be its fair market value. The $60,000 figure is the diminution claimed by Shaw while Crane prays for $130,000 for this type of damage. The trial court has allowed the other damage claims to go forward. These claims involve the actual physical damage to the property, potential loss of productivity, crop loss and the like.

. . . .

"Plaintiffs' claim for these losses is based upon the fact of the flood, the possibility that the lagoon system might release water and flood the property again, the notoriety of this flooding, and the alleged detrimental effect that it might have on the market value of the property. Since the breach Plaintiffs have not attempted, and do not intend at this time, to sell their property.

"It should be noted, in passing, that Plaintiffs argue that although the structure is now safe, as Mr. Williams, their engineer, testified, it will become unsafe in the future because the City of Rupert, through improper maintenance and failure to repair, will allow the structure to become unsafe such that it will flood again."

The contractor defendant relies on *Delano v. Smith,* 206 Mass. 365, 92 N.E. 500 (Mass.1910), and *Douglas Aircraft Co. v. Kerns,* 164 F.2d 1007 (10th Cir.1947), and *Gray v. Southern Facilities, Inc.,* 256 S.C.

558, 183 S.E.2d 438 (1971), for the proposition that apprehension of future injury will not sustain a claim of permanent injury. The engineering firm defendant urges in its brief that "the record establishes that plaintiffs cannot prove the probability that a flood will occur in the future."[1]

From the reading of the briefs it appears that the parties involved and the court below used probable, certain, and possible as more or less interchangably. No issue has been raised that the court erred in requiring certainty as to future injury. The issue presented hinges on the direct testimony of the engineer, which, though open to the challenge that it is conflicting and self-contradictory, nevertheless on a motion for summary judgment does raise a genuine triable issue of fact to be resolved at trial. In further proceedings it is suggested by the Chief Justice that the proper test to be applied as to establishing the threat and risk of future flooding, however, is one of a reasonable degree of probability, and not one of certainty. I do not disagree, but did not perceive that such was the heart of the controversy.

Where "probability," in another context, has come before the Court, resort has been made to Webster's New International Dictionary, 2nd Edition, where it has been given a meaning of "having more evidence for than against." *Dean v. Dravo Corp.*, 95 Idaho 558, 511 P.2d 1334 (1973), also citing other authority utilizing almost the same language. *Id.* at 562, 511 P.2d at 1337. The word "certain," as used by the trial court, does not appear to be a term much used in civil jurisprudence, and as to what extent it would be said to require greater proof than "probable," we are not called upon to venture—noting as aforesaid that in the proceedings below and in the briefs filed in this Court there has not been any apparent disagreement between the parties.

*On Rehearing.* In keeping with my recently expressed belief that there are occasions when appellate courts on rehearing should not ordinarily withdraw and discard their first opinions—which may be perceived as a belief that better insight is thus had in the evolvement of the final opinion stating the law of the case—I stand by my earlier opinion, *supra,* and offer these additional comments.

As I hoped to make clear earlier, the damages sought are for alleged diminution in value of plaintiffs' lands allegedly caused by the threat and risk of anticipated future flooding. Damages are not sought presently for injuries which may be caused by future flooding, but for diminution in present market value attributable to the threat. The situation here would be similar to the erection by Brown of an eighteen-story building adjacent to White's cottage, the problem being a mistake in construction which leaves Brown's building with a ten degree list in the direction of White's cottage. A drop in the market value of White's cottage is not open to challenge. Yet the eighteen-story building may stand a long time before it topples over onto the cottage. Meanwhile, so it seems to me, as it also seems where a residence is threatened by the eruption of a volcano, the market value is affected downward. While it is not likely that a responsible defendant can be found regarding the volcano, in this case before us, as with the leaning skyscraper, defendants are about who can respond in damages, if damages can be proven, and if liability is established.

While there may be some merit in Justice Bakes' view that summary judgment as to the designer and the builder should be affirmed, all considered, however, as with the eighteen-story building which started listing, all of those connected with the construction of the lagoon appear to be properly joined in this action—the purpose of which is not to establish present damages for a future flood, but to obtain present damages for diminished market value. One could also believe that the City of

---

**1.** FOOTNOTE ADDED ON REHEARING. The district court also relied on those cases for the proposition that speculative and conjectural damages cannot be obtained, and that injury to the reputation of land would be too speculative and too uncertain.

Rupert would interplead the designer and the builder if the latter two were allowed out on their motions aimed at the plaintiffs.

Continuing to adhere to the belief that the issues raised should be resolved at trial, I have joined the Court's opinion.