838 P.2d 1384

Joe MARTY and Ella M. Marty, Husband and Wife, Paul Gunderson and Deoine Gunderson, Husband and Wife, and Carl W. Lundholm and Gladys I. Lundholm, Husband and Wife, Plaintiff–Appellants,

v.

STATE of Idaho, a Body Politic, Water District No. 31 and Flood Control District No. 5, Defendant–Respondents.

No. 19347.

Supreme Court of Idaho,
Idaho Falls, May 1992 Term.

Aug. 11, 1992.

Rehearing Denied Nov. 5, 1992.

Ling, Nielsen & Robinson, Rupert, for plaintiff-appellants. Brent C. Tingey, argued.

Larry EchoHawk, Atty. Gen., Boise, Curt M. Thomsen, Deputy Atty. Gen., argued, Idaho Falls, for defendant-respondents.

BAKES, Chief Justice.

This is the second appeal in this case involving the flooding of appellant's land in the Mud Lake area during 1984 and 1985. At issue is whether certain actions taken by the Idaho Department of Water Resources, Water District No. 31 and Flood Control District No. 5 amounted to a "taking" under Article 1, § 14, of the Idaho Constitution, entitling appellants to a claim for inverse condemnation. The trial court granted summary judgment in favor of respondents. We affirm.

Appellants filed this action in 1985 seeking damages and injunctive relief against certain governmental agencies, canal companies and water users for the flooding of their land. The action was brought pursuant to a variety of legal theories including trespass, strict liability, negligence and inverse condemnation. The trial court granted partial summary judgment dismissing appellants' trespass and strict liability claims and dismissing the defendants State of Idaho and Jefferson County from appellants' negligence claim. The trial court subsequently entered a second order on summary judgment dismissing all party defendants under several theories of immunity and dismissing the appellants' claim for inverse condemnation and injunctive relief. It was from these orders that the first appeal was taken.

In *Marty v. State*, 117 Idaho 133, 786 P.2d 524 (1989) (*Marty I*), we ruled: (1) that all the governmental agencies except the flood control district were immune from liability under I.C. § 42–1717; (2) that the flood control district was immune from liability under I.C. § 6–904(1); (3) that the canal companies and water users breached no duty in tort to appellants; (4) that the trial court did not abuse its discretion in denying appellants injunctive relief; and (5) that appellants were entitled to pursue their claim for inverse condemnation. Based on this last ruling, the matter was remanded to the district court for resolution of the inverse condemnation issue.

After remand and further discovery, respondents filed a new motion for summary judgment supported by the affidavit of Dr. Charles Brockway, a professional civil and agricultural engineer and the associate director of the Idaho Water Resources Research Institute. Brockway's affidavit stated that he had studied the hydrology of Mud Lake and had reviewed the stream flow records for Camas Creek, the main tributary into Mud Lake, since they began keeping records.[1] The affidavit stated that the mean annual discharge from Camas Creek into Mud Lake was 490 cfs, but that in 1984 it was 1320 cfs, the highest discharge on record. In 1983 it was 994 cfs, the third highest recorded discharge into Mud Lake. Brockway stated that he had made a statistical analysis of the flows of Camas Creek and determined that the record discharge which occurred in 1984 "has a return period of 63 years, which means that a flow of that magnitude or greater could be expected to occur once every 63 years," and that a flow "equal to or greater than the 1983 peak flow of 994 cfs could be expected to occur once every 21 years." He further stated that it was his opinion that the flooding of plaintiffs' property in 1984 was due to the unprecedented flow of surface and subsurface water into the Mud Lake Basin in 1983 and 1984 and, given the flooding facilities available, the flooding was unavoidable. He further stated that

none of the actions which the flood district took resulted in the flooding of plaintiffs' lands, and "if they had not acted as they did, the flooding of plaintiffs' lands would have been worse than it was."

In opposition to the motion for summary judgment, appellants filed the affidavit of plaintiff Paul Gunderson, a landowner in Mud Lake. In his affidavit, Gunderson expressed the opinion that, "The frequency of flooding in the future could be expected to occur once every seven (7) years." Respondents made a motion under I.R.C.P. 56(e) to strike Gunderson's affidavit on the basis that the affidavit does not affirmatively show that Paul Gunderson is qualified as an expert witness on the issues to which Gunderson's affidavit is directed. The trial court granted respondents' motion to strike the affidavit and then granted respondents' motion for summary judgment, dismissing appellants' inverse condemnation action. This appeal followed.

First as to appellants' claim that the trial court erred in striking Gunderson's affidavit filed in opposition to summary judgment, the trial court stated:

> I.R.C.P. 56(e) requires that "affidavits shall be made on personal knowledge, shall set forth [sic] facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

> The affidavit of Paul Gunderson does not comply with these requirements and his statements of fact or opinion are, therefore, not admissible evidence which this Court may consider in ruling on the pending Motion for Summary Judgment.

In its order granting respondents' motion for summary judgment, the trial court expressly found that "no foundation has been established which will permit this Court to consider Gunderson's opinion that 'the frequency of flooding in the future could be expected to occur once every seven (7) years.' "

---

1. Brockway's affidavit pointed out that the total flow of floodwater into Mud Lake is not gauged, that the ungauged flow into the lake consists of other creeks, overland flow, and spring and artesian well flows.

In *IHC Hosp. v. Board of Commrs.*, 108 Idaho 136, 697 P.2d 1150 (1985), we stated that an expert is someone with "a power to draw inferences from facts which a jury [or court] would not be competent to draw." 108 Idaho at 142, 697 P.2d at 1156 (citing McCormick on Evidence § 13 (2d ed. 1972)). We further noted:

> To warrant the use of expert testimony, ... two elements are required. First, the subject of the inference must be so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman ... Second, the witness must have sufficient skill, knowledge, or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.... The practice, however, in respect to experts' qualifications has not for the most part crystallized in specific rules, but is recognized as a matter for the trial judge's discretion reviewable only for abuse. Reversals for abuse are rare.

108 Idaho at 142–43, 697 P.2d at 1156–57 (citing McCormick on Evidence § 13 (2d ed. 1972)). *See also State v. Winn*, 121 Idaho 850, 828 P.2d 879 (1992); *State v. Crea*, 119 Idaho 352, 806 P.2d 445 (1991) (Whether a witness is sufficiently qualified as an expert is a matter largely within the sound discretion of the trial court.).

In this case, Gunderson in his affidavit rendered his opinion that "the frequency of flooding in the future could be expected to occur once every seven (7) years." Such opinion relates to the science of hydrology which has been defined as "the science dealing with the properties, distribution, and circulation of water; specifically, the study of water on the surface of the land, in the soil and underlying rocks...." Webster's Third New International Dictionary (16th ed. 1971). However, Gunderson's affidavit demonstrated no qualifications which he might have relating to hydrology. The affidavit gave his education and training as follows:

> That this affiant is a farmer and has obtained an Associates of Science Degree in Chemistry from Ricks College, Bachelor of Science Degree in Agronomy from Utah State University and a Masters Degree in Business Administration from the University of Utah. As a farmer whose lands have been permanently damaged as a result of the acts of defendants, and as an agronomist, is familiar with the activities of the Mud Lake Dam or levee. I am familiar with all the flood control and water distribution structures and facilities in the Mud Lake area and have reviewed official documents relating to the Mud Lake area, annual precipitation records, flow records, photographs, topography maps and official records of each of the defendants. In addition I have attended numerous meetings in the Mud Lake area in which representatives of the defendants were present and discussed the Mud Lake Dam and its operations.

When specifically asked in his deposition about his training or experience in hydrology, Mr. Gunderson gave the following response:

Q. Do you have any particular training or experience in the area of hydrology?

A. I'm an agronomist.

Q. Is an agronomist trained in the area of hydrology?

A. They're trained in the area of irrigation.

Q. And what is the extent of your training in the area of irrigation, as an agronomist?

A. Several classes, pumps, wells, how they work, measuring water.

Q. What do you understand the study of hydrology to be?

A. Flow of water.

Q. Did you study that in particular?

A. No, not really. I was more in the chemistry and the soils, plants.

Appellants argue that Gunderson's bachelor's degree in agronomy and master's degree in business administration, with a course in statistics, qualified him to render an expert opinion regarding the frequency in flooding of Mud Lake based upon a statistical analysis of the recorded annual peak flows. However, the trial court con-

cluded that Gunderson did not have the necessary expert training, background and experience in the hydrology of the Mud Lake Basin to render an expert opinion.

We conclude that the trial court did not abuse its discretion in concluding that Gunderson did not have the necessary expert qualifications to render an expert opinion regarding the hydrology and frequency of flooding in the Mud Lake Basin. I.R.E. 702; *State v. Winn, supra; State v. Crea, supra; Sun Valley Shopping Center v. Idaho Power Co.,* 119 Idaho 87, 803 P.2d 993 (1991); *Garrett Freightlines, Inc. v. Bannock Paving Co.,* 112 Idaho 722, 735 P.2d 1033 (1987) (Error to allow expert . opinion on state's traffic control plan when witness was not an engineer and had no engineering training or experience in traffic control and safety design.); *Jerome Thriftway Drug, Inc. v. Winslow,* 110 Idaho 615, 619, 717 P.2d 1033, 1037 (1986) (No abuse of discretion in disallowing fire chief to testify as an expert on electricity when "he was not a licensed electrician, was not qualified to inspect wiring, had no knowledge about metallurgy involved in electrical wiring, and had taken no courses in electricity."). Since Gunderson's affidavit failed to set forth any facts which establish that he has knowledge of or experience in hydrology, the trial court did not abuse its discretion in striking his opinion that "the frequency of flooding in the future could be expected to occur once every seven (7) years."

▆ Appellants argue that it was improper for the trial court to strike all of Gunderson's affidavit. They maintain that under Federal Rule 56(e), which is identical to I.R.C.P. 56(e), "[e]ven if the affidavit does contain some inadmissible matter, the whole affidavit need not be stricken or disregarded; the court may strike or disregard the inadmissible parts and consider the rest of the affidavit." Moore's Federal Practice, Vol. 6, part 2, § 56.22(1) (1988) (footnotes omitted). While we agree that the trial court should not have stricken any parts of the affidavit which satisfy Rule 56(e), those parts of Gunderson's affidavit which do satisfy the requirements of Rule 56(e) were not relevant to prove that their land had suffered the "permanent damage" required by our decision in *Marty I* in order to prove an inverse condemnation claim. In *Marty I* we stated:

> Whether the landowners are entitled to compensation for inverse condemnation will first depend on whether their property was permanently damaged. *Turcotte v. State,* 84 Idaho 451, 455–456, 373 P.2d 569, 571–72 (1962). What is permanent damage for recovery for inverse condemnation under our state constitution may depend on the probability of future flooding. *Shaw v. City of Rupert,* 106 Idaho 526, 528, 681 P.2d 1001, 1003 (1984). Under the fifth and fourteenth amendments to the United States Constitution whether the damage is permanent may depend on proof of frequent and inevitably recurring inundation due to governmental action. *Pinkham v. Lewiston Orchards Irrigation Dist.,* 862 F.2d 184, 189 n. 5 (9th Cir.1988).

117 Idaho at 144, 786 P.2d at 535. Since the trial court did not err in striking the portion of Gunderson's affidavit which attempted to state an expert opinion on frequency of flooding, the remainder of appellants' affidavit fails to establish that there will be either "frequent and inevitably recurring inundation" of their lands or that there is a "future probability of flooding" of their lands.[2] Without such evidence, appellants have failed to prove that there exists any evidence raising a genuine issue of material fact to counter Brockway's affidavit. The trial court did not err in granting summary judgment. *See Pe-*

---

**2.** The trial court in granting the summary judgment applied the "frequent and inevitably recurring inundation" test of *Pinkham v. Lewiston Orchards Irr. Dist., supra,* which we referenced in *Marty I,* as set out above. The trial court rejected the "future probability of flooding" test of *Shaw v. City of Rupert,* 106 Idaho 526, 681 P.2d 1001 (1984), pointing out that *Shaw* was a tort action, not an inverse condemnation proceeding. On appeal, appellants argue that the trial court erred in not applying the *Shaw* "probability of future flooding" test. We need not resolve whether the *Shaw* test is applicable to this inverse condemnation proceeding because appellants have failed to satisfy either the *Shaw* or the *Pinkham* test.

*tricevich v. Salmon River Canal Co.*, 92 Idaho 865, 452 P.2d 362 (1969).

Appellants alternatively argue that even if Gunderson's affidavit fails to establish a "probability of future flooding" or "frequent and inevitably recurring inundation," the affidavit still establishes that there was damage to appellants' land incapable of rectification by reasonable restoration, and therefore, under *Alesko v. Union Pacific RR Co.*, 62 Idaho 235, 109 P.2d 874 (1941), there was an issue of fact over whether their land was permanently damaged. However, appellants' reliance on *Alesko* is misplaced. *Alesko* involved an action in negligence, not an action for inverse condemnation against a governmental entity. *Alesko* is not authority in an inverse condemnation claim.

Appellants have also appealed the trial court's order granting respondents their discretionary costs. The trial court issued a Judgment For Costs which awarded certain discretionary costs to the respondents in the amount of $1,787.70. Appellants argue that the trial court failed to provide a basis as to why such costs were exceptional and reasonably incurred as it was required to do under I.R.C.P. 54(d)(1)(D).[3]

However, our review of the trial court's Judgment For Costs reveals that the trial court adequately stated the reasons why it felt that the discretionary costs were exceptional and reasonably incurred. The trial court did not abuse its discretion in awarding these costs. *Sun Valley Shopping Center, Inc. v. Idaho Power*, 119 Idaho 87, 803 P.2d 993 (1991).

Finally, respondents have requested attorney fees on appeal under I.C. § 12–121. However, we conclude that the appeal was not frivolously pursued and deny the request.

The judgment of the trial court is affirmed. Costs to respondents. No attorney fees awarded on appeal.

BISTLINE, JOHNSON and McDEVITT, JJ., and CAREY, J. Pro Tem., concur.

---

**3.** I.R.C.P. 54(d)(1)(D) states in part:

Additional items of cost not enumerated in, or in an amount in excess of that listed in subparagraph (C), may be allowed upon a showing that said costs were necessary and exceptional costs reasonably incurred, and should in the interest of justice be assessed against the adverse party. The trial court, in ruling upon objections to such discretionary costs contained in the memorandum of costs, shall make express findings as to why such specific item of discretionary cost should or should not be allowed.