# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 44252-2016

| | | |
|---|---|---|
| IDAHO INDEPENDENT BANK, an Idaho Corporation, | ) ) ) | Boise, June 2017 Term |
| Plaintiff-Respondent, | ) ) | 2017 Opinion No. 81 |
| v. | ) ) | Filed: July 10, 2017 |
| MARTY D. FRANTZ, an individual, and CINDY M. FRANTZ, an individual, | ) ) ) | Karel A. Lehrman, Clerk |
| Defendants-Appellants. | ) ) ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, in and for Kootenai County. Hon. Rich Christensen, District Judge.

The judgment of the district court is <u>affirmed</u>.

Cindy M. Frantz and Marty D. Frantz argued in their own behalf.[1]

Sheila R. Schwager, Hawley Troxell Ennis & Hawley LLP, Boise, argued for respondent.

---

EISMANN, Justice.

This is an appeal out of Kootenai County from a judgment in favor of the lender against the guarantors of construction loans made to the guarantors' closely held corporation. We affirm the judgment of the district court.

## I.
## Factual Background.

Marty and Cindy Frantz executed a series of commercial guaranties so that Idaho Independent Bank ("Bank") would lend money to Eagle Ridge on Twin Lakes, Inc. ("Eagle Ridge"), a closely held corporation in which the Frantzes held a majority interest and Mr. Frantz

---

[1] Appellants were represented by counsel throughout the proceedings in the trial court.

was the president. Eagle Ridge executed in favor of Bank a promissory note dated December 14, 2006, in the principal sum of $3,750,000, with a maturity date of April 14, 2008; a renewal promissory note dated July 11, 2007, in the principal sum of $4,500,000, with a maturity date of April 14, 2008; an agreement dated April 17, 2008, changing the maturity date of the renewal note to June 15, 2008; a second renewal promissory note dated June 18, 2008, in the principal sum of $4,500,000, with a maturity date of December 17, 2008; a third renewal promissory note dated January 21, 2009, in the principal sum of $4,500,000, with a maturity date of January 15, 2010; and an agreement dated March 11, 2010, extending the maturity date to April 15, 2010. In order to induce Bank to extend credit to Eagle Ridge, the Frantzes executed five commercial guaranties in which they unconditionally guaranteed the full and punctual payment and satisfaction of all indebtedness of Eagle Ridge to Bank. They executed their last guaranties on March 11, 2010.

On July 19, 2010, Bank filed this action against the Frantzes to recover on their commercial guaranties. The Frantzes filed an answer in which they admitted the material allegations in the complaint, but asserted affirmative defenses and counterclaims against Bank. They later amended their answer to include a third-party claim against Eagle Ridge.

In October 2011, the Frantzes filed a petition under chapter 11 of the bankruptcy code the day before Mr. Frantz's deposition was to occur. The petition stayed this action. Bank was the Frantzes' largest creditor. On April 23, 2013, the Frantzes' bankruptcy was converted to a liquidation case under chapter 7, and a trustee was duly appointed for the estate. On August 23, 2013, Bank filed an adversary complaint alleging causes of action under 11 U.S.C. §§ 523(a)(2) and (a)(6) seeking both a judgment for damages for all sums owed the Bank by the Frantzes and a ruling that such damages, plus interest, attorney fees and costs, were nondischargeable. Less than two weeks before the trial on Bank's adversary proceeding in the bankruptcy case, the Frantzes filed a voluntary waiver of discharge under 11 U.S.C. § 727(a)(10), and on May 20, 2015, the bankruptcy court filed an order approving the waiver. As a result, the bankruptcy court was deprived of jurisdiction to hear the adversary proceeding, and it dismissed it without prejudice. However, the court did award sanctions in the sum of $49,477.46 against the Frantzes and their attorney, jointly and severally, for their conduct during the course of the adversary proceeding. The court found that their conduct constituted misuse of litigation tactics to cause economic injury to an opponent and its counsel in the form of increased litigation costs.

2

On May 27, 2015, Bank filed in this case a notice that because of the waiver of discharge, the automatic stay was terminated. On September 21, 2015, Bank filed a motion for summary judgment. In its supporting memorandum it argued that it was entitled to a judgment against the Frantzes based on the guaranties that they had signed, that there was no merit to the Frantzes' affirmative defenses, and that their counterclaims should be dismissed because they were owned by the trustee in bankruptcy.

On October 6, 2015, the Frantzes filed a motion for partial summary judgment, seeking a ruling that Bank was estopped from enforcing the guaranties and that there was an accord and satisfaction. The claimed accord and satisfaction was based on Bank giving the bankruptcy trustee a $20,000 check that Bank had received from the Frantzes, where the check was marked payment in full. After receiving briefing and hearing the oral arguments of the parties, the district court granted Bank's motion for summary judgment and denied the Frantzes' motion.

The district court entered a judgment against the Frantzes "in the amount of $9,193,546.50, plus pre-judgment interest at the rate of $2,475.02 per diem from September 16, 2015, until the date this Judgment is entered." Because the Frantzes had filed a third-party claim against Eagle Ridge that was yet unresolved, the court certified the judgment as final pursuant to Rule 54(b) of the Idaho Rules of Civil Procedure. The Frantzes filed a motion for reconsideration, and the court denied that motion. They then timely appealed.

## II.

**Did the District Court Err in Denying the Frantzes' Affirmative Defenses Based upon the Breach of an Alleged Oral Contract?**

When reviewing on appeal the granting of a motion for summary judgment, we apply the same standard used by the trial court in ruling on the motion. *Infanger v. City of Salmon*, 137 Idaho 45, 46–47, 44 P.3d 1100, 1101–02 (2002). We construe all disputed facts, and draw all reasonable inferences from the record, in favor of the non-moving party. *Id*. at 47, 44 P.3d at 1102. Summary judgment is appropriate only if the evidence in the record and any admissions show that there is no genuine issue of any material fact regarding the issues raised in the pleadings and that the moving party is entitled to judgment as a matter of law. *Id*. If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review. *Id*.

3

The Frantzes state as the issue on appeal, "Did the district court err by dismissing the Frantzes'affirmative defenses for lack of privity?" In order to put that argument in its factual context as to why the district court ruled that the Frantzes lacked privity, it is necessary to address other litigation between the parties.

On June 27, 2014, Eagle Ridge filed a lawsuit against Bank ("Eagle Ridge lawsuit") in which Eagle Ridge alleged that in 2008 Bank made a "2008 Loan Commitment." The Frantzes held a majority interest in Eagle Ridge, and Mr. Frantz was its president. As stated in the complaint, the agreement to lend additional money was between Eagle Ridge and Bank. The complaint stated:

> Under the 2008 Loan Commitment IIB agreed to lend the construction funds to Eagle Ridge under the same loan terms as the then existing loan between IIB and Eagle Ridge, so long as Frantz (the guarantor) remained credit worthy and an appraisal of IIB's collateral would justify the loan amount (IIB stated that the loan amount could not exceed 65% loan to as completed value). IIB further required that Eagle Ridge would raise additional capital, approximately $1m, and invest it into the project over the next year increasing Eagle Ridge's "skin in the game." Then, in 2009 a new appraisal would be obtained and a loan issued pursuant to the aforementioned constraints (appraisal justification and creditworthiness).

In the Eagle Ridge lawsuit, Eagle Ridge sought: (a) to recover damages for breach of the oral contract to lend additional money to Eagle Ridge, (b) to obtain a declaratory judgment that Eagle Ridge was not liable for late charges and penalty fees, (c) to obtain damages for tortious interference with an economic relationship caused by Bank wrongfully suing Marty Frantz, (d) to obtain damages for unjust enrichment for the additional time and capital that Eagle Ridge invested in the development project, and (e) to recover damages for breach of the covenant of good faith and fair dealing. Bank filed a counterclaim against Eagle Ridge and a third party claim against the Frantzes in which it sought foreclosure of its mortgage on certain real property. On September 21, 2015, Bank filed a motion for summary judgment, which was granted, and Bank obtained a decree of foreclosure and later a deficiency judgment.

In the Eagle Ridge lawsuit, Eagle Ridge and the Frantzes, through their counsel, alleged in a document filed with the court that "Marty Frantz was Eagle Ridge on Twin Lakes, Inc.'s primary agent. All of the interactions between Marty Frantz and IIB were in behalf of Eagle Ridge on Twin Lakes, Inc."

4

The same judge presided over the Eagle Ridge lawsuit and this action. In addressing whether Bank was entitled to summary judgment, the court wrote that Bank "also argues that these affirmative defenses rely on an alleged oral agreement between Plaintiff and Eagle Ridge, which Defendants were not a party to, and, thus do not have standing to bring any defenses that are based on that alleged oral agreement." In a footnote to this statement, the court wrote:

> This Court is familiar with the issue of whether IIB and Eagle Ridge entered into an oral agreement under which IIB agreed to loan additional money to Eagle Ridge, and then breached that agreement. Those allegations are the basis for a cause of action pending before this court in *Eagle Ridge v. Idaho Independent Bank*, CV 14-5339.

Thus, the district court viewed the Frantzes as alleging that there was an oral contract between Eagle Ridge and Bank under which Bank agreed to loan additional sums to Eagle Ridge, as claimed in the Eagle Ridge lawsuit. That was the basis of the court's ruling that the Frantzes lacked standing to assert Eagle Ridge's rights as affirmative defenses.

One of the arguments that Bank made in its brief supporting its motion for summary judgment was that the alleged oral agreement asserted by the Frantzes was barred by the terms of the guaranties signed by the Frantzes. Bank argued:

> In the Guaranties the Defendants specifically waive the right to require IIB "to continue lending money or to extend other credit to [Eagle Ridge]." Further, the Defendants expressly acknowledged and agreed that "no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty." Further, the Defendants, as Guarantors, expressly waived the right to assert any setoff, counterclaims, and defenses against unconditionally paying IIB the outstanding obligations.

(Citations to the record omitted.) In response, the Frantzes simply asserted that they had not waived their defenses. Their entire argument was as follows:

> The Bank's argument in its Motion for Summary Judgment is essentially that the Defendants signed the guaranty and having signed the guaranty the Bank can do anything it wants. The Bank equates the signing of the guaranty as a waiver of any defenses and at the same time an exculpation of any wrong doing by the Bank. Obviously this is not a correct interpretation of the law, nor would it be equitable.
>
> Defendants admit they signed personal guaranties. But Defendants have not waived their defenses where the Plaintiff has acted improperly, acted in a manner in which alters or effects the the [sic] personal guaranties, acted pursuant to a long history of course of dealing or made statements upon which Plaintiff

5

knew or should have known Defendants would detrimentally rely and where the Defendants have completely performed based upon Plaintiffs promises.

In making this argument, the Frantzes did not acknowledge that they signed personal guaranties after that alleged oral agreement and the breach of the alleged oral agreement.

After the district court ruled that the Frantzes' affirmative defenses were barred by lack of privity because they were based upon the alleged oral agreement between Bank and Eagle Ridge, the Frantzes moved for reconsideration. In their motion, they stated that the factual background included the following statement:

When IIB refused to extend the loan [to Eagle Ridge] and instead required payoff, Eagle Ridge was unable to pay. Frantz was also unable to pay off the loan at that point as he had expended $3.1 million of personal funds on infrastructure on the property instead of paying down the loan, which course of action was made at IIB's suggestion in exchange for a loan increase and extension.

In this statement of the facts, the loan was to Eagle Ridge and the alleged oral agreement was for "a loan increase and extension." The only loan mentioned was the one to Eagle Ridge. Thus, here, the Frantzes contended that the alleged oral agreement was to extend additional credit to Eagle Ridge.

In arguing that the Frantzes were in privity with Bank, they stated that "the Frantzes personally had privity with IIB in regards to the oral agreement because they were a party to that oral agreement in their capacity as guarantors in the overall loan transaction and because they had a substantial interest, as guarantors, in the terms of the loan." Thus, their argument as to privity with respect to the alleged oral agreement was based upon the contention that they would be affected by the failure to extend additional credit to Eagle Ridge. As they also wrote:

More importantly, it simply makes sense that the Frantzes, as unconditional guarantors of this debt, would be intensely interested in ensuring that the loan does not go bad and that the terms are appropriate. That is exactly what happened; Mr. Frantz worked with IIB personally, as the guarantor, to ensure that the Eagle Ridge loan would not go into default because he always felt that he was the principal obligor anyway.

They then asserted that "there's nothing that indicates that when Mr. Frantz was working with the bank that he was *not* representing himself *and* Eagle Ridge." Of course, that conflicts with the Frantzes' statement in the Eagle Ridge lawsuit that "[a]ll of the interactions between Marty Frantz and IIB were in behalf of Eagle Ridge on Twin Lakes, Inc."

6

Finally, they contended that they were in privity with Bank regarding the alleged oral agreement because that agreement was simply part of one overall transaction, which included the guaranties that they signed. They asserted that "the Frantzes personally had privity with IIB in regards to the oral agreement because they were a party to that oral agreement in their capacity as guarantors in the overall loan transaction and because they had a substantial interest, as guarantors, in the terms of the loan." Thus, they did not contend that the oral agreement was between them and Bank. They alleged that they were a party to the alleged oral agreement "because they had a substantial interest, as guarantors, in the terms of the loan." They characterized the single, large transaction as follows:

> The Commercial Guarantees and other documents themselves indicate that the Note, the Mortgage, and the Guarantees are not separate, individual transactions but parts to one single, large transaction. The Frantzes would not have executed the personal guarantees if IIB had not promised to lend Eagle Ridge money. IIB would not have lent money to Eagle ridge if the Frantzes had not personally guaranteed the debt. Eagle Ridge would not have existed if it were not for the Frantzes forming it for that purpose. It is all a single transaction and the Frantzes are party to that transaction.

Thus, in the district court, the Frantzes contended that the oral agreement was an agreement between Bank and Eagle Ridge to extend additional credit to Eagle Ridge as necessary to complete its development project. The Frantzes chose to create a corporate entity, Eagle Ridge, to develop the property and obtain loans from Bank, and they cannot disavow the separate entity when it is to their advantage.

On appeal, the Frantzes alleged in their opening brief that there was evidence showing that they were a party to the oral contract and therefore were in privity with Bank with respect to that oral promise, although it is not clear whether they contended that they and Eagle Ridge were parties to the alleged oral contract with Bank or that only they were. The Frantzes argue:

> The Frantzes conferred with the Bank about whether the Frantzes should invest their millions of dollars into Eagle Ridge or pay down the loan. That is when the bank represented to the Frantzes, not Eagle Ridge, that if the Frantzes invested their money into Eagle Ridge, IIB would continue to fund the development of Eagle Ridge. *The promise by the bank was to the Frantzes, personally. It was not made exclusively to Eagle Ridge.*
> It would not make sense for IIB to make Eagle Ridge such a promise. Eagle Ridge had nothing to offer to the Bank to secure such a promise from it; Eagle Ridge did not have the millions of dollars from the sale-lease-back. It was

7

the Frantzes who had the millions in cash. IIB issued the oral agreement to the Frantzes to induce them to invest their funds into Eagle Ridge.

(Emphasis added.)

The Bank pointed out in its respondent's brief that even if the alleged oral promise was made to the Frantzes' to extend credit to Eagle Ridge, the Frantzes would still be liable under the terms of the guaranties. In their reply brief, the Frantzes then changed the terms of the alleged oral agreement, contending that it was not to extend credit to Eagle Ridge. It was to make loans to any entity that the Frantzes may create.

In their reply brief, they state: "However, the Frantzes have not alleged that IIB would issue a loan to Eagle Ridge. Instead, the Frantzes have asserted that IIB would continue to fund the development of *the Project*, not *the corporation*, Eagle Ridge." They argue:

> The following sworn assertions by the Frantzes illustrate this:
>
>> From the inception of the Eagle Ridge on Twin Lakes project, **IIB represented to the Frantz's, [sic]** that so long as they were creditworthy, **IIB would fund development loans for Eagle Ridge at Twin Lakes** [which is the name of the Project, there is no "Inc." designation] . . . **through completion of the project."**

The Frantzes further argue:

> IIB's own guarantees (which it unilaterally wrote) only restricted the Frantzes from requiring IIB to lend to the Eagle Ridge corporation. However, the Frantzes are not, in their affirmative defenses, claiming that IIB should have loaned money to the Eagle Ridge corporation. Since the beginning, the Frantzes have maintained that IIB was required to loan money so that the (Eagle Ridge) *Project* could be completed. The Borrower for future loan transactions would have almost certainly been a different entity since the Eagle Ridge corporation did not own the additional 50 acre collateral that was going to be hypothecated to the Bank.

The language that the Frantzes quoted above was from their counterclaim, in which they alleged:

> From the inception of the Eagle Ridge on Twin Lakes project, IIB represented to the Frantz's, [sic] that so long as they were creditworthy, IIB would fund development loans for Eagle Ridge at Twin Lakes at seventy five percent (75%) of loan to value through completion of the project. IIB and Eagle Ridge proceeded on this course until 2008 when the real estate markets experienced unprecedented economic value deflation.

8

This unprecedented market decline created a funding issue at the proposed IIB loan to value ratio of seventy five percent (75%). . . . In order to induce the Frantz's [sic] to provide additional collateral, which would directly benefit IIB's position in the property, IIB agreed with Frantz's [sic] plan to support the loan with additional collateral to improve the loan to value ratio. IIB required that the outstanding loan to Eagle Ridge be amortized through 2009 until a new appraisal could be obtained in [sic] to determine the level of funding which could be given for the final round of funding. IIB represented to the Frantz's [sic] that IIB would continue to fund development loans but would only be able to do so at a ratio of sixty (60%) loan to value because of the economic downturn. Within a few months after the new appraisal was completed in September 2009, IIB represented to Frantz's [sic] that IIB had underwritten Frantz's [sic] and proved them for further funding and that IIB had found Frantz's [sic] to be creditworthy and that IIB would approve a three year loan extension.

In reliance upon IIB's promise to provide financing as described above to complete the Eagle Ridge project, Frantz's [sic] personally invested substantial amounts of capital into the project during the end of 2008, 2009 and 2010 and reconfigured the Eagle Ridge project. As a result of Frantz's [sic] effort in reconfiguring the project and Frantz's [sic] infusion of substantial amounts of new capital, the overall reconfigured project reappraised at $15,800,000 "as completed" in September of 2009. With this new appraisal the project qualified for funding of $9,300,000 at the (60%) loan to value ratio agreed to by IIB. However, IIB refused to honor its commitment to fund the completion of the project and instead changed its position and refused to fund completion of the project.

The Frantzes contend that the references to the "Eagle Ridge project" had nothing to do with the corporation. It only referred to the project the corporation was working on. However, in their answer they defined "Eagle Ridge" to mean the corporation. In their factual allegations, they wrote, "(Eagle Ridge on Twin Lakes, Inc., eventually became the construction borrower and will be referred to herein as 'Eagle Ridge')." Thus, the reference to the Eagle Ridge project would mean, according to the definition in their pleading, the Eagle Ridge on Twin Lakes, Inc., project. It was the corporation's project, and the references to further extension of credit obviously referred to the corporation. For example, the Frantzes alleged that after the 2009 appraisal, Bank represented that it "would approve a three year loan extension. In reliance upon IIB's promise to provide financing as described above to complete the Eagle Ridge project, Frantz's [sic] personally invested substantial amounts of capital into the project during the end of 2008, 2009 and 2010." The reference to a "three year loan extension" could only mean the loan that had already been made to Eagle Ridge. One cannot extend a loan that had not yet been made. The Frantzes then stated, "In reliance upon IIB's promise to provide financing as

described above . . . ." The only promise to provide financing "as described above" was the three year loan extension.

This pivot by the Frantzes is insufficient to change the outcome. There is no evidence in the record that Bank allegedly agreed to extend credit to some other unknown entity, and such argument is contrary to the position taken by the Frantzes in the district court and in the Eagle Ridge lawsuit.

As mentioned above, in its motion for summary judgment, one of the arguments that Bank made in its brief supporting its motion for summary judgment was that the alleged oral agreement asserted by the Frantzes was barred by the terms of the guaranties signed by the Frantzes. Bank quoted provisions in the guaranties where the Frantzes specifically waived the right to require Bank "to continue lending money or to extend other credit to [Eagle Ridge]," where they expressly acknowledged and agreed that "no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty," and where they expressly waived the right to assert any setoff, counterclaims, and defenses against unconditionally paying Bank the outstanding obligations. Although the district court did not address this argument, Bank argued in it respondent's brief that the judgment could be affirmed based upon the provisions in the guaranties, and the Frantzes responded to such argument in their reply brief. Under these circumstances, this Court can address this argument by Bank on appeal. *Nicholson v. Coeur d'Alene Placer Mining Corp.*, 161 Idaho 877, 392 P.3d 1218, 1222 (2017).

The Frantzes signed five guaranties, the last one on March 11, 2010, which was after the alleged oral agreement had been entered into and after the alleged breach of the oral agreement. The relevant provisions of the guaranty are as follows:

> CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE. For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower [Eagle Ridge] to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. . . . .
> . . . .
> GUARANTOR'S REPRESENTATIONS AND WARRANTIES. Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; . . . .
> . . . .

10

GUARANTOR'S WAIVERS. Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; . . .

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral, including, but not limited to, any rights or defenses arising by reason of . . . (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. . . . .
Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower; the Guarantor, or both.
GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS. Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to b contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.
. . . .
MISCELLANEOUS PROVISIONS. The following miscellaneous provisions are a part of this Guaranty:

> Amendments. This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. . . . .

In the guaranties signed by the Frantzes, with knowledge of the alleged breach of the oral agreement to extend additional credit to Eagle Ridge, they "absolutely and unconditionally guarantee[d] full and punctual payment and satisfaction of the Indebtedness of Borrower [Eagle Ridge] to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents"; they warranted that "no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty"; they waived any right to require Bank "to continue lending money or to extend other credit to Borrower [Eagle Ridge]" and "any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness"; and they agreed that "[t]his Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty." They have not presented any argument or authority that would relieve them of the provisions of the guaranties they signed. Therefore, we affirm the judgment of the district court on this alternative ground.

### III.

### Is Either Party Entitled to an Award of Attorney Fees on Appeal?

The Frantzes request an award of attorney fees on appeal pursuant to Idaho Code section 12-120(3) on the ground that this is an action to recover in a commercial transaction. They are not entitled to an award of attorney fees on appeal for two reasons: (a) persons representing themselves are not entitled to an award of attorney fees, *Chavez v. Canyon Cnty., State, ex rel. its Duly Elected Bd. of Cnty. Comm'rs*, 152 Idaho 297, 305, 271 P.3d 695, 703 (2012), and they are not the prevailing parties on appeal, *Cummings v. Stephens*, 157 Idaho 348, 336 P.3d 281, 300 (2014).

Bank also seeks an award of attorney fees on appeal pursuant to Idaho Code section 12-120(3) on the ground that this is an action to recover on a guaranty and in a commercial transaction, and it seeks an award of attorney fees pursuant to the provision in the guaranties stating, "Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty." Because Bank is the prevailing party on appeal, it is entitled to an award of attorney fees under section 12-120(3) and the guaranties.

### IV.

### Conclusion.

We affirm the judgment of the district court, and we award Respondent costs and attorney fees on appeal.

Chief Justice BURDICK, and Justices JONES, HORTON and BRODY **CONCUR.**